Johnny Andrew **GILBERT**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–87–250–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 14, 1988.

Rehearing Denied Dec. 15, 1989.

Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Cindy Singleton, Michael Parrish, and Bert Isaacs, Asst. Dist. Attys., Fort Worth, for State.

Before FENDER, C.J., and KELTNER and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, Johnny Andrew Gilbert, was convicted by a jury of the offense of aggravated robbery with a deadly weapon. *See* TEX.PENAL CODE ANN. sec. 29.03 (Vernon 1974). The jury assessed punishment at fifty years' confinement in the Texas Department of Corrections.

We reverse and remand.

On February 27, 1985, at 9:00 a.m., a teller at the Southwest National Bank in Fort Worth was robbed. The assailant pointed a gun at a teller and escaped with $3,000. Two months later the teller saw a picture of a man in the paper. She told police that this was the man who robbed her. His picture was in the paper in connection with a bank robbery and attempted capital murder in Arlington, Texas. A gun was recovered in connection with that crime that the Fort Worth bank teller later identified at trial as the weapon used in the February 27 hold up.

Appellant argues three points of error. Our ruling on point two disposes of the need to rule on the other two points. In point two, appellant asserts the trial court erred in allowing the State to introduce

evidence of extraneous offenses in rebuttal to appellant's attempt to correct the false impression created by the State. We agree.

At a hearing on pretrial motions, the State agreed to a motion in limine regarding mention of the extraneous robbery and attempted murder during the guilt or innocence phase of the trial. During the State's case in chief, the prosecutor elicited from a police officer on direct examination that appellant had led them to the gun and said, "That's it," "That's the one," or words to that effect. On cross-examination defense counsel asked the following questions of the officer:

[BY MR. BURNS:] Now, Officer Brown, in regards to your arrest of Johnny Andrew Gilbert back on April 20th, 1985, and subsequent questioning of him, you were assisted in that by another officer were you not, a Ruben Puente?

A. Yes.

Q. And you were talking to him regarding an incident involving another individual as well, Mr. Kenneth Dryden; is that correct?

A. Yes.

Q. And that—your questioning and talk at that time did not involve—it was not directed toward the robbery case of February the 27th, 1985, involving a Ms. Jamie Trantham, was it?

A. No.

Q. And at the time that y'all went out to the field to find the gun, again, you were not being taken out there or talking to Johnny Andrew Gilbert regarding the February 27th, 1985, robbery of Jamie Trantham, were you?

A. No.

Q. And the statement allegedly made by Johnny Andrew Gilbert out there in the field regarding "That's the gun," or "That's the one," something to that effect, was not talking about the armed robbery of February 27th, 1985, of Jamie Trantham, was it?

A. No.

Q. And in regards to the statement that you have gone into about being led out to the gun and Johnny Andrew Gilbert knowing where the gun was, that is in—in regards to a statement that he made that another individual had thrown the gun out there in the field, was it not, specifically, Kenneth Dryden?

A. If I could check my notes, I'm not sure which party was—

. . . .

THE WITNESS: Okay. Would you ask the question again?

BY MR. BURNS:

Q. The statement that Johnny Gilbert made that led you to the gun was in regards to a statement that he made that the gun had been dropped in that field by Mr. Kenneth Dryden; is that correct?

A. That's correct.

The record reveals on redirect that the following exchange took place:

BY MR. PARRISH:

Q. Tell the jury who Kenneth Wayne Dryden is.

MR. BURNS: Your Honor, at this time, we will object to collateral and extraneous matters being brought up in front of the jury. They are not connected to this case. That was not opened by cross-examination as regards to this individual and for that reason, Your Honor, we had to go into these things to prove up—because of the admission by this court of this gun to show that this gun is in no way connected to the case before us now. Johnny Andrew Gilbert never said it was or indicated it was and for that reason, Your Honor, we object to now bootstrapping of the prosecution in getting into the identity and extraneous cases on Kenneth Dryden.

THE COURT: Okay. Your objection is overruled.

MR. BURNS: Note our exception, Your Honor.

BY MR. PARRISH:

Q. Tell this jury who Kenneth Wayne Dryden is.

A. He shot Arlington Police Officer John Bell after a bank robbery in Arlington two and a half years ago.

MR. BURNS: We renew our objection.

THE COURT: Objection overruled.

MR. BURNS: Note our exception.

BY MR. PARRISH:

Q. Was that on or about April the 19th of 1985?

A. Yes, it was.

Q. And what type of institution was robbed?

A. A Gibraltar Savings and Loan on Highway 303.

Q. To the best of your knowledge, is this Defendant, Johnny Andrew Gilbert, also charged in that offense?

MR. BURNS: Your Honor, objection to the extraneous and collateral matters and going into extraneous offenses at this time before this jury.

THE COURT: Objection overruled.

MR. BURNS: Note our exception.

THE WITNESS: Yes.

BY MR. PARRISH:

Q. Is he, in fact, indicated as a co-defendant in that bank robbery with Kenneth Wayne Dryden?

A. Yes.

MR. BURNS: We object again to extraneous and collateral.

THE COURT: Overruled.

BY MR. PARRISH:

Q. Is he also charged with attempted capital murder of Arlington Police Officer John Bell?

MR. BURNS: We object to extraneous and collateral offense being injected in this case.

THE COURT: All right. Your objection is overruled.

THE WITNESS: Yes, he is.

MR. BURNS: Note our exception.

BY MR. PARRISH:

Q. I believe, as the Defense counsel asked you about on cross-examination, was Arlington Police Officer John Bell shot?

A. Yes, he was.

Q. Do you know what caliber he was shot with?

A. A .22 magnum.

Q. What caliber is State's 14?

A. That is a .22 magnum revolver.

Q. Who led you to that gun?

A. Johnny Gilbert.

■ It is a fundamental principle of law that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). Therefore, the State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). The reason for this rule is that although the evidence has some legal relevance to the general issue of whether the accused committed the act charged, it is inadmissible because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). *See also Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

■ This evidence may, however, under some circumstances, become admissible; the State may introduce evidence of an accused's extraneous misconduct upon a showing both that the evidence is relevant to a material issue in the case and that the probative value of the evidence outweighs its inflammatory or prejudicial potential. *Morgan v. State*, 692 S.W.2d 877, 879 (Tex. Crim.App.1985). The requirement that the material issue be contested as a prerequisite to admission of extraneous acts in proof thereof, is no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case. *Boutwell v. State*, 719 S.W.2d 164 (Tex.Crim.App.1985) (opinion on reh'g). It is really, therefore, an aspect of the "more probative than prejudicial" analysis, since the greater the State's need to resort to extraneous offenses to prove up some material issue in the case, the higher will be the probative value of that offense in relation to its potential for prejudice. *See id.*

Additionally, TEX.R.CRIM.EVID. 404(b) provides some guidance as to the admissibility of extraneous offenses. The rule reads in pertinent part:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

*Id.*

■ The State had a material need to prove that the defendant had access to the pistol. The State fulfilled this need by introducing evidence that the defendant took the officer to a field and showed him where the weapon was. At this point there was no further need for the State to pursue the extraneous offense. On cross-examination defendant's counsel carefully extracted information to correct any misimpression the jury might have had as to what the appellant was identifying. We find that by his mention of the name Kenneth Wayne Dryden, defense counsel did invite a response from the State to the extent of explaining who Kenneth Wayne Dryden was. However, we do not find that appellant opened the door on cross-examination to the introduction of evidence that he was charged in the extraneous offense.

The fact that appellant was indicted as a co-defendant in another bank robbery, and that he was also charged with attempted capital murder of a police officer is irrelevant to this case and highly prejudicial to the appellant. We can find no permissible use for this evidence under rule 404(b). The effect of such testimony is to show that appellant is of a criminal character. Appellant properly and timely preserved his error by repeatedly objecting. Accordingly, we find that the introduction of this testimony as to appellant's involvement was error.

■ Appellate review of error in criminal cases usually involves a two-step process.

*Rose v. State,* 752 S.W.2d 529, 553 (Tex. Crim.App.1988) (opinion on reh'g). In the first step we have determined that error occurred in the trial. In the second step, we must determine whether the error calls for reversal of the conviction. *See id.* The general harmless error test to be applied in criminal cases is set out in TEX.R.APP.P. 81(b)(2):

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

*Id.* We cannot say beyond a reasonable doubt that the error made no contribution to the conviction. The extraneous offense is a serious one and likely was very prejudicial to the determination of guilt or innocence on this crime. Accordingly, we sustain appellant's point of error number two.

Reversed and remanded for a new trial.

### ORDER

On this day came on to be considered state's motion for rehearing.

It is the opinion of this Court that said motion should be and is hereby overruled. It is the order of this Court that the opinion and judgment of December 14, 1988 stand unchanged.

The Clerk of this Court is directed to transmit a copy of this Order to the attorneys of record.

It is so ordered.

KELTNER, Justice, dissenting.

I respectfully dissent from the majority's holding that the trial court erred in admitting evidence of an extraneous offense once the matter was opened by Gilbert.

The majority carefully analyzes the testimony elicited from Officer Brown on direct and cross-examination and concludes that Gilbert did not open the door on cross-examination to the introduction of the extraneous offense. Although I appreciate the

concerns voiced by the majority, I disagree with its conclusion.

It is fundamental to our system of justice that an accused is entitled to be tried only on the accusation made in the State's pleadings and he should not be tried for collateral crimes nor for being a criminal generally. *Crank v. State*, 761 S.W.2d 328 (Tex.Crim.App.1988); *Cantrell v. State*, 731 S.W.2d 84, 88 (Tex.Crim.App.1987). As a result, evidence of extraneous offenses is usually excluded, not because it is without legal relevance, but because such evidence is highly prejudicial and forces the accused to defend himself against charges not in the State's pleadings. *Crank*, 761 S.W.2d at 341.

However, the rule against the use of extraneous offenses is not absolute. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). Texas courts have long recognized an extraneous offense committed by the accused may become admissible if it is relevant to a material issue in the case, and the relevancy value of the offense outweighs its prejudicial potential. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). The adoption of Rule 403 of the Texas Rules of Criminal Evidence has slightly changed our analysis of such issues. Under Rule 403, relevant evidence may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Crank*, 761 S.W.2d at 342 n. 5.

Therefore, evidence of extraneous offenses must be analyzed for relevance within the context of the merits of each case. *Cantrell*, 731 S.W.2d at 90. In this regard, we must give great deference to the trial court's discretion and reverse only when that discretion is abused. *Id.*

In the instant case we are faced with an unusual fact situation in which evidence of one crime is entwined with evidence of another. As a result, the trial court was involved in a delicate balancing act, by attempting to protect the defendant's rights on one hand and protecting the State's right to present a full and complete picture to the jury on the other. The evidence demonstrated that Gilbert had participated in two bank robberies. The first bank robbery was the subject of this criminal prosecution. In the second bank robbery, Gilbert was indicted with Kenneth Dryden for both aggravated robbery and attempted capital murder of a policeman.

Gilbert agreed to cooperate with the police in the second bank robbery and as a result, gave statements to authorities identifying Dryden as the instigator of the bank robbery and the person who attempted to kill the police officer. Gilbert admitted only to being the get-away driver in the second robbery.

Gilbert was implicated in the first bank robbery as a result of publicity surrounding the second robbery. Specifically, Jamie Trantham, a teller at the bank robbed in the first robbery, saw Gilbert's picture in the newspaper as a result of his arrest in the second robbery. She called authorities and later identified Gilbert in a police line-up. As a result of a motion in limine, Trantham did not testify how she became involved in a police line-up or the fact that she had identified Gilbert from a picture resulting from the second robbery. Trantham also testified that a pistol, found in the investigation of the second robbery, looked like the pistol which was used by Gilbert in the first robbery.

The State introduced the pistol at trial, and Trantham confirmed that it looked like the pistol used in the robbery. However, she could not verify that it was the same pistol. It was crucial for the State to attempt to prove Gilbert's relationship to the pistol.

The authorities recovered the pistol after Gilbert led them to a field where he stated Dryden had thrown the pistol. When it was discovered, Gilbert stated, "That's it," "That's the one." Gilbert also stated Dryden used the pistol to shoot the police officer after the second burglary.

Before trial, Gilbert moved to exclude the statement in which he pointed out the pistol to Detective Brown with the words, "That's it," "That's the one," on article 38.22 grounds. The court overruled the motion. However, Gilbert also made a mo-

tion in limine in which he suggested the State not be allowed to introduce evidence of the second bank robbery and attempted capital murder without obtaining prior approval of the court. This motion was granted.

As a result, the State offered evidence that Gilbert led authorities to the field and identified the pistol by stating, "That's it," "That's the one." The State did not attempt to prove the reason Gilbert had led authorities to the field or that the pistol had been used in an incident resulting in indictments for both aggravated robbery and attempted capital murder. On cross-examination, Gilbert's attorney elicited testimony from the officer that Gilbert's comments were not confirmation that he had thrown the pistol in the field or that the pistol found was the pistol used in the first robbery. Instead, the officer testified Gilbert claimed the pistol had been thrown there by another person.

Had the inquiry stopped at this juncture, it is doubtful that the trial court would have allowed further inquiry into the second offense. However, the cross-examination went further. Gilbert's attorney asked whether a search of the field involved an incident involving Gilbert and Kenneth Dryden. Additionally, Gilbert's attorney asked whether Gilbert had told the authorities that the gun had been dropped in the field by Kenneth Dryden. The officer responded affirmatively to both questions. At this point, the jury may well have been left with the impression that Dryden, not Gilbert, was guilty of the robbery, because Dryden was the one who left the pistol in the field.

As a result, the scope of the inquiry was broadened and Gilbert's relationship with Dryden in the second robbery became relevant.

The trial court was called upon to balance the State's rights to present a full picture to the jury against the defendant's rights to be tried solely on the facts of the case charged in the indictment. In my opinion, the trial court performed its duty well and did not abuse its discretion in admitting evidence of an extraneous offense.

Therefore, I would affirm the judgment of the trial court.