Johnny Andrew GILBERT, Appellant,

v.

The STATE of Texas, Appellee.

No. 091–90.

Court of Criminal Appeals of Texas,
En Banc.

March 13, 1991.

Rehearing Overruled May 15, 1991.

Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall and Christian Harrison, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of aggravated robbery and his punishment was assessed by the jury at 50 years confinement. On appeal he contended that the trial court erred to admit evidence of an extraneous robbery over his objection. The Fort Worth Court of Appeals agreed and reversed the conviction, with one judge dissenting. *Gilbert v. State*, 781 S.W.2d 296 (Tex.App.—1988). We granted petition for discretionary review in order to examine the State's contention that the court of appeals paid insufficient deference to the trial court's ruling, under Tex.R.Cr.Evid., Rules 404(b) and 403, that evidence of the extraneous robbery was admissible in this cause. Tex.R.App.Pro., Rule 200(c)(2), (4) & (5).

### I.

On February 27, 1985, Jamie Trantham was working as a teller at a walk-up window of the Southwest Bank in Fort Worth. She testified that shortly before 9:00 a.m. that morning she was robbed at gunpoint by a man she identified as appellant. Trantham also identified a black, long-barrel revolver, "like a cowboy gun," as one

that looked like the gun pointed at her on the morning of the robbery. Several months later Trantham saw a photograph of appellant in the newspaper. Believing him to be the man who had robbed her, she alerted security personnel at Southwest Bank, and a lineup was arranged. She identified appellant in the lineup. Trantham was not allowed to tell the jury the reason appellant's photograph had appeared in the newspaper, *viz:* that he had been arrested for his part in a subsequent robbery committed in Arlington.

David Brown, an Arlington police detective, testified he arrested appellant on April 20, 1985. Although the arrest was in connection with the Arlington robbery, Brown did not reveal that fact on his direct examination. After appellant was Mirandized, he led officers to a vacant field, where they found the revolver that Trantham testified resembled the gun used to rob her. The prosecutor inquired:

"Q: Just step to level ground, sir, and if you would, please, sir, demonstrate and tell the jury what the Defendant, Johnny Andrew Gilbert, said when he saw that gun lying in the field?

[Objection that admission of any statement would violate Article 38.22, V.A.C. C.P., overruled.]

Q: Demonstrate what Johnny Gilbert did and if he said anything at the time, say what he said, as you recall.

A: We looked in a specific area. I found the gun. Nobody touched it except for the Crime Scene Officer, Beth Turnbow.

Johnny Gilbert was a few feet away. He walked over and pointed just a few feet away, standing right above it. He pointed to the firearm and stated, 'That's it,' 'That's the one,' or words to that effect [indicating]."

Shortly after this colloquy, Brown was passed for cross-examination. Thus, the jury was very likely left with the impression that when appellant told the officers that the revolver in the field was "it," and "the one," he had meant it was the weapon used to rob Trantham at Southwest Bank.

This was not in fact the case. Out of the presence of the jury it was revealed that Brown had been questioning appellant about the Arlington offense. In the course of that transaction the revolver had been used by one Kenneth Dryden to shoot an Arlington police officer. When appellant told Brown the gun in the field was "it," what he meant was that it was the gun used by Dryden to commit the extraneous robbery. Attempting to rectify any false impression engendered by the direct examination of Brown, defense counsel asked him on cross:

"Q: And you were talking to [appellant] regarding an incident involving another individual as well, Mr. Kenneth Dryden; is that correct?

A: Yes.

Q: And that—your questioning and talk at that time did not involve—it was not directed toward the robbery case of February the 27th, 1985, involving a Ms. Jamie Trantham, was it?

A: No.

Q: And at the time that y'all went out to the field to find the gun, again, you were not being taken out there or talking to Johnny Andrew Gilbert regarding the February 27th, 1985, robbery of Jamie Trantham, were you?

A: No.

Q: And the statement allegedly made by Johnny Andrew Gilbert out there in the field regarding "That's the gun," or "That's the one," something to that effect, was not talking about the armed robbery of February 27th, 1985, of Jamie Trantham, was it?

A: No.

Q: And in regards to the statement that you have gone into about being led out to the gun and Johnny Andrew Gilbert knowing where the gun was, that is in— in regards to a statement that he made that another individual had thrown the gun out there in the field, was it not, specifically, Kenneth Dryden?

\*     \*     \*     \*     \*     \*

THE WITNESS: Okay. Would you ask the question again?

Q: The statement that Johnny Gilbert made that led you to the gun was in regards to a statement that he made that the gun had been dropped in that field by Mr. Kenneth Dryden; is that correct?

A: That's correct."

The prosecutor opened his redirect examination of Brown with an instruction to Brown that he inform the jury "who Kenneth Wayne Dryden is." Appellant objected, to no avail:

"[DEFENSE COUNSEL]: Your Honor, at this time, we will object to collateral and extraneous matters being brought up in front of the jury. They are not connected to this case. That was not opened by cross-examination as regards to this individual and for that reason, Your Honor, we had to go into these things to prove up—because of the admission by this court of this gun to show that this gun is in no way connected to the case before us now. Johnny Andrew Gilbert never said it was or indicated it was and for that reason, Your Honor, we object to now bootstrapping of the prosecution in getting into the identity and extraneous cases on Kenneth Dryden.

THE COURT: Okay. Your objection is overruled.

[DEFENSE COUNSEL]: Note our exception, Your Honor.

BY [PROSECUTOR]:

Q: Tell this jury who Kenneth Wayne Dryden is.

A: He shot Arlington Police Officer John Bell after a bank robbery in Arlington two and a half years ago.

[DEFENSE COUNSEL]: We renew our objection.

THE COURT: Objection overruled.

[DEFENSE COUNSEL]: Note our exception.

BY [PROSECUTOR]:

Q: Was that on or about April the 19th of 1985?

A: Yes, it was.

Q: And what type of institution was robbed?

A: A Gibraltar Savings and Loan on Highway 303.

Q: To the best of your knowledge, is this Defendant, Johnny Andrew Gilbert, also charged in that offense?

[DEFENSE COUNSEL]: Your Honor, objection to the extraneous and collateral matters and going into extraneous offenses at this time before this jury.

THE COURT: Objection overruled.

[DEFENSE COUNSEL]: Note our exception.

THE WITNESS: Yes.

BY [PROSECUTOR]:

Q: Is he, in fact, indicted as a co-defendant in that bank robbery with Kenneth Wayne Dryden?

A: Yes.

[DEFENSE COUNSEL]: We object again to extraneous and collateral.

THE COURT: Overruled.

BY [PROSECUTOR]:

Q: Is he also charged with attempted capital murder of Arlington Police Officer John Bell?

[DEFENSE COUNSEL]: We object to extraneous and collateral offense being injected in this case.

THE COURT: All right. Your objection is overruled.

THE WITNESS: Yes, he is.

[DEFENSE COUNSEL]: Note our exception.

BY [PROSECUTOR]:

Q: I believe, as the Defense counsel asked you about on cross-examination, was Arlington Police Officer John Bell shot?

A: Yes, he was.

Q: Do you know what caliber he was shot with?

A: A .22 magnum.

Q: What caliber is [the revolver found in the field]?

A: That is a .22 magnum revolver.

Q: Who led you to that gun?

A: Johnny Gilbert.

[PROSECUTOR]: Pass the witness.

BY [DEFENSE COUNSEL]:

Q: Kenneth Dryden is the person that was tried and committed [sic: convicted?] and actually shot Officer Bell, wasn't he?

A: Yes.

Q: It was Kenneth Dryden that actually went in and held up that Gibraltar Savings, wasn't it?

A: He is the one that went inside, yes.

\* \* \* \* \* \*

BY [PROSECUTOR]:

Q: As defense counsel asked, when Johnny Gilbert was telling you how that robbery on the 19th went down, what did Johnny Gilbert tell you his part was in that robbery?

[DEFENSE COUNSEL]: We object to extraneous and collateral matters again being brought before this jury and the statements regarding his involvement in that have not been opened—

[Court ultimately overrules objection.]

Q: Let me just repeat the last question.

What was this Defendant's, Johnny Andrew Gilbert's involvement in the April 19th, 1985, robbery—bank robbery?

A: He was the getaway driver."

The court of appeals reversed the conviction, believing that the trial court had allowed the State to go one step too far. That appellant knew the location of and "had access to" a weapon that looked like the one used to commit the Southwest Bank robbery was a relevant fact, and this was initially proven without resort to any mention of the Gibraltar Savings robbery. But the State did elicit appellant's statement, "that's it," or "that's the one," over objection. Appellant was entitled to remedy any false impression created by the non-contextual admission of this statement. When in doing so appellant mentioned Kenneth Dryden, the court of appeals reasoned, he opened the door for the State to establish who Dryden was. But the trial court erred in allowing the State to prove appellant was also charged in the extraneous robbery. The court of appeals concluded:

"The fact the appellant was indicted as the co-defendant in another bank robbery, and that he was also charged with attempted capital murder of a police offi-

cer is irrelevant to this case and highly prejudicial to the appellant. We can find no permissible use for this evidence under rule 404(b). The effect of such testimony is to show that appellant is of a criminal character. Appellant properly and timely preserved his error by repeatedly objecting. Accordingly, we find that the introduction of this testimony as to appellant's involvement was error."

781 S.W.2d at 299.

Justice Keltner, in dissent, disagreed with the majority's conclusion that the fact of appellant's involvement and indictment was not relevant. Once it was legitimately explained to the jury who Kenneth Dryden was, Justice Keltner opined, another false impression arose. "At this point, the jury may well have been left with the impression that Dryden, not Gilbert, was guilty of the [Southwest Bank] robbery, because Dryden was the one who left the pistol in the field." *Id.*, at 301. Justice Keltner believed it was within the discretion of the trial court to admit evidence that appellant was a co-defendant in the Gibraltar Savings robbery in order to counteract this perceived misimpression.

## II.

In the course of its exposition of applicable law the court of appeals observed:

"[T]he State may introduce evidence of an accused's extraneous misconduct upon a showing both that the evidence is relevant to a material issue in the case and that the probative value of the evidence outweighs its inflammatory or prejudicial potential. *Morgan v. State*, 692 S.W.2d 877, 879 (Tex.Cr.App.1985)."

781 S.W.2d at 298. The State now contends that the court of appeals erred in relying upon caselaw that predates the Texas Rules of Criminal Evidence. Under Tex.R.Cr.Evid., Rule 403,[1] applicable at the time of appellant's trial, relevant evidence "may be excluded if its probative value is

---

1. Rule 403, supra, reads:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

substantially outweighed by the danger of unfair prejudice...." In *Crank v. State,* 761 S.W.2d 328, at 342, n. 5 (Tex.Cr.App. 1988), this Court noted that "[t]he plain language of Rule 403 shifts the focus somewhat from the test enunciated in [prior caselaw]. The approach under Rule 403 is to *admit relevant evidence* unless the probative value of that relevant evidence is *substantially* outweighed by the danger of unfair prejudice to a defendant." [2] See also *Rodda v. State,* 745 S.W.2d 415 (Tex. App.—Houston [14th] 1988, pet. ref'd). In his dissent, Justice Keltner noticed this "shift" in passing. The State now urges this Court to adopt the posture of the United States Courts of Appeals in interpreting Rule 403 of the Federal Rules of Evidence, which is identical to our own Rule 403, thus requiring our courts of appeals to pay great deference to trial court decisions that unfair prejudice does not "substantially outweigh" probative value. An appellate court should overturn a trial court's decision, the State maintains, only in the face of a "clear abuse of discretion." E.g., *United States v. Maggitt,* 784 F.2d 590, 597 (CA5 1986). See also 22 Wright & Graham, Federal Practice and Procedure: Evidence § 5250 (1978), at 544.

In our view, however, the question whether the court of appeals afforded sufficient deference to the trial court's balancing of unfair prejudice against probative value is, in context of the present cause, a purely academic one. As we read the opinions in the court of appeals, they do not purport to review any balancing of probativeness versus prejudice under Rule

403, supra. Instead, the point of contention between majority and dissent in the court of appeals was whether evidence of appellant's involvement in the Gibraltar Savings robbery had relevance to any issue in the case beyond its value as character evidence. The issue that the court of appeals majority resolved adversely to the State was whether the extraneous offense had any probative value at all under Tex.R. Cr.Evid., Rule 404(b).[3] Finding that it did not, the court of appeals did not have to review the trial court's balance of probativeness and prejudice under Rule 403, supra.

Evidence is "relevant" that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Cr.Evid., Rule 401. "All relevant evidence is admissible, except as otherwise provided by ... these rules ... Evidence which is not relevant is inadmissible." Tex.R.Cr.Evid., Rule 402. Tex.R.Cr.Evid., Rule 404, generally prohibits "the circumstantial use of character evidence." Goode, Wellborn & Sharlot, Texas Practice: Texas Rules of Evidence: Civil and Criminal § 404.2 (1988), at 106. Thus, although relevant,[4] "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b), supra.[5]

▪ Evidence of "other crimes, wrongs, or acts" "may, however, be admissible" if it has relevance *apart from* its tendency "to prove the character of a person in order

2. Emphasis in the original.

3. Rule 404(b) reads, in pertinent part:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"

4. Obviously the rules contemplate that character conformity evidence may be "relevant" as defined by Rule 401, supra. Otherwise, evidence of "other crimes, wrongs, or acts" proffered for

that purpose would be inadmissible under Rule 402, supra, without resort to the prohibition in Rule 404(b), supra.

5. If the character of a party is directly in issue, the rule does not bar character evidence, "since then it would not be employed to establish a propensity to act in a certain way." *Goode, Wellborn & Sharlot,* supra, at 106. Such evidence would not only be relevant, Rule 401, supra, it would also be admissible under Rule 402, supra, because it is not rendered inadmissible by Rule 404, supra. Keep in mind, however, that character *per se* "is almost never an element of a charge or defense in criminal cases." *Id.*

to show that he acted in conformity therewith." Rule 404(b), supra. Hence, the State may introduce such evidence where it logically serves "to make ... more probable" an elemental fact; where it serves "to make ... more probable" an evidentiary fact that inferentially leads to an elemental fact; or where it serves "to make ... less probable" defensive evidence that undermines an elemental fact. Rules 404(b) and 401, both supra. Illustrative of the permissible "purposes" to which evidence of "crimes, wrongs, or acts" may be put are "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Rule 404(b), supra. Extraneous offense evidence that logically serves any of these purposes is "relevant" *beyond* its tendency "to prove the character of a person to show that he acted in conformity therewith." It is therefore admissible, subject only to the trial court's discretion nevertheless to exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 403, supra. On the other hand, if extraneous offense evidence is not "relevant" apart from supporting an inference of "character conformity," it is absolutely inadmissible under Rule 404(b), supra. In that event the balancing otherwise required by Rule 403 is obviated, the rulemakers having essentially deemed that the probativeness of such evidence is "substantially outweighed" by the danger of unfair prejudice *as a matter of law. United States v. Beechum,* 582 F.2d 898, at 910 (CA5 1978).

Having found the extraneous offense did not logically establish any of the issues for which "other crimes, wrongs, or acts" *may* be admitted, the court of appeals effectively held that appellant's involvement in the Gibraltar Savings robbery was inadmissible under Rule 404(b), supra. Thus, the court of appeals was not called upon to review the balance of probativeness against prejudice under Rule 403, supra. The dissent simply disagreed that the extraneous offense in this cause had no tendency to prove or disprove a fact of consequence other than character conformity. Manifestly, neither the majority nor the dissent reached the Rule 403 balancing analysis.

■ Whatever discretion the trial court possesses in balancing probative and prejudicial aspects of relevant evidence to determine whether to exclude it under Rule 403, supra, "the trial court has no discretion to admit evidence that is otherwise inadmissible; the discretion runs solely to excluding evidence that would otherwise be admissible. Thus, if there is no purpose for which the evidence of another crime is relevant, the trial judge's discretion is no bar to reversal." *Wright & Graham,* supra, at 544. Although some degree of appellate deference is appropriate in reviewing the trial court's decision that evidence of "other crimes, wrongs, or acts" is relevant to a material issue apart from its character conformity value, trial court discretion does not translate into license to admit evidence that is patently irrelevant.

■ The majority below found that evidence of appellant's indictment and involvement in the Gibraltar Savings robbery served none of the permissible purposes enumerated in Rule 404(b), supra, and hence, was inadmissible. Justice Keltner disagreed, believing that evidence of appellant's participation in the Gibraltar Savings robbery was admissible to refute the possible inference that it was Dryden, rather than appellant, who committed the Southwest Bank robbery. However, we fail to see how evidence that appellant was indicted for and acted as wheelman in the commission of the Gibraltar Savings robbery tended to make any less probable the inference that Dryden, *as opposed to appellant,* committed the Southwest Bank robbery. It was Dryden, after all, who used the gun in the Gibraltar Savings robbery to shoot a police officer, and who later deposited it in the field. Jurors inclined to believe Dryden perpetrated the Southwest Bank robbery because the same gun was used to rob the Gibraltar Savings would not be any less inclined to believe it upon learning that appellant participated as a getaway driver. All that proof of appellant's complicity did was to make it marginally more probable that he committed the

Southwest Bank robbery—because he is a bank robber in general. This is precisely the sort of inference based upon character conformity that the first sentence of Rule 404(b) does not allow, the probative value "substantially outweighed" by unfair prejudice as a matter of law. The trial court had no discretion to admit such evidence.

The State does not assail the court of appeals' conclusion that error in admitting the extraneous offense was harmful. Therefore, the judgment of the court of appeals is affirmed.

MILLER, J., concurs in the result.

McCORMICK, Presiding Judge, dissenting.

Believing that Justice David Keltner's dissenting opinion in the Court of Appeals correctly addressed the issue presented, I respectfully dissent.

CAMPBELL and WHITE, JJ., join this dissent.