Ramon **GARCIA** a/k/a Ramon H. Garcia, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–93–091–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 22, 1994.

18

Lloyd W. Willis, Edinburg, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Rebecca Pool, Asst. Dist. Atty., Edinburg, for appellee.

Before GILBERTO HINOJOSA, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant was indicted for burglarizing Charles Webster's house. A jury found appellant guilty, and the trial court assessed punishment, enhanced by two prior felony convictions, at 50 years in prison. Appellant asserts, by two points of error, that the trial court erroneously admitted evidence showing he rode a stolen bicycle to the Websters' house. We affirm.

■ By point one, appellant contends the trial court erred in admitting the evidence because the State failed to show that he stole the bicycle.[1] We do not consider the merits of this argument because appellant failed to raise this contention in the trial court and thereby failed to preserve error. *See* Tex. R.App.P. 52(a). Point one is overruled.

In point two, appellant contends the probative value of the extraneous offense was outweighed by the unfair prejudice to him. To adequately address appellant's argument, a review of the evidence is necessary.

On June 19, 1992, Roger Wahl saw a man riding a bicycle very slowly by his house. Wahl watched as the man looked around, stopped next door at the Websters' house, rang the Websters' doorbell, and walked toward the Websters' backyard. Wahl, who watched from a bedroom window, lost sight of the man as he went around the house, so Wahl called a neighbor to see if the neighbor could see what was going on. Unable to find out what was going on and believing the man's actions were suspicious, Wahl directed his wife Lois to call the police. Wahl then moved to another bedroom window just in time to see "the backside of" a man going into the Websters' kitchen window.[2]

Police Sergeant Juan Hernandez was patrolling in the neighborhood and just happened to be in front of the Wahls' house when he received a broadcast about a burglary in progress. He drove to the end of the block and came back through an alley behind the Wahls' and Websters' houses just in time to see someone going in through the Websters' window. He parked his patrol car and headed toward the window. When Lois Wahl saw the officer arrive in the back, she decided to go out front with her portable phone. Meanwhile, Officer Hernandez approached the Websters' sliding glass door. At that point, the intruder looked out and was, for a brief moment, face-to-face with the officer. Hernandez could see the man's upper body and face and that he was wearing a cap and dark shirt. Hernandez tried to open the sliding glass door, but it was locked. The intruder turned and ran out the front door, leaving his bicycle behind. By the time Officer Hernandez got around to the front, the intruder was gone.[3]

Lois Wahl told Hernandez the man had run between some houses across the street. Hernandez ran after him but could not locate him. Hernandez returned to the Wahls' to

---

1. Recently, the Court of Criminal Appeals has reiterated that before evidence of an extraneous offense is admissible, the trial court, in determining relevance, must make a determination that the jury could find beyond a reasonable doubt that the defendant committed the extraneous offense. *Harrell v. State*, 884 S.W.2d 154 (Tex. Crim.App.1994) (not yet reported).

2. Wahl could not say that the man going into the window was the same one he had seen on the bicycle. Nonetheless, it is a logical inference as Wahl saw only one person around the Websters' house.

3. Roger Wahl estimated that ten to twelve minutes passed from the time he first saw the man until the man fled.

get a description of the man, which he then broadcast along with the direction of flight to other units. A minute or two later, Officer Jesus Vasquez observed a man fitting the broadcast description running about four blocks from the Websters'. Vasquez captured the man after a foot chase through some woods, across a drainage ditch, and into an open field. Vasquez found "nothing" on or around appellant, but he had seen appellant make gestures like he was dropping something out of his pockets. Vasquez checked around and found some collector's currency in a plastic bag.

Charles Webster came home after being notified about the burglary. He found some drawers in his bedroom chest pulled out and a jewelry box open. A gold watch and tie clasp were missing.

At trial, Officer Vasquez identified appellant as the man he caught. Officer Hernandez identified appellant as the man he saw in the Websters' house. Roger and Lois Wahl could not identify appellant as the man they saw at the Websters' house. Roger Wahl testified the man he saw wore a dark blue T-shirt and shorts, was about 5'9" tall, and was about the same build as himself. Roger Wahl testified that appellant fit within the description he had given. Lois Wahl described the man she saw as "about 5'8" to 5'10", in that range, heavy set, Hispanic," wearing shorts and a dark T-shirt.

Officer Patsy Pemelton assisted with the Webster burglary. She processed the house for latent prints but was unable to lift any legible prints. Later, she went through the property appellant had when arrested to see if there were any stolen items. She identified State's exhibit # 9 as a photograph of a Jordan Air baseball cap appellant had with him when arrested. She identified State's exhibit # 10 as a photograph of the bicycle abandoned at the Websters' house. Over appellant's objection, Pemelton testified that after she photographed the property, she released it "to the person who identified it."[4]

Michael Anzaldua, a twelve-year-old boy, testified that in June 1992, his house was "robbed." Over appellant's objection, Anzaldua identified the bicycle which was left by the burglar at the Websters' house as belonging to him. Anzaldua testified he got his bicycle back from the police department two days after he had last seen it. The State also proffered evidence that the baseball cap belonged to Anzaldua, but the trial court sustained appellant's objection regarding it, and so no evidence was introduced that the cap belonged to Anzaldua.[5] The trial court admitted evidence about the stolen bicycle for the limited purposes of showing intent and identity, and the jury was so instructed in the charge.

Appellant objected twice to the introduction of evidence that the bicycle and baseball cap were stolen. The first time was when Officer Pemelton testified about the items. The second time was when Anzaldua testified. The State's theory of admission was two-fold. First, the State argued appellant had the stolen property while he was committing the Webster burglary and therefore it showed his intent to steal. The State argued such evidence was necessary to show intent because appellant was not captured with any of the Websters' property. Second, the State argued the stolen property established appellant's identity as the man who entered the Websters' house. Since the cap and bicycle belonged to the same person, appellant's possession of the cap at the time of his arrest tied him to the bicycle, and the bicycle tied him to the Websters' house. The State argued such evidence was necessary to show identity because the Wahls could not identify appellant as the intruder and because Officer Hernandez's identification of appellant needed to be buttressed in light of appellant's cross-examination of Hernandez about his ability to identify the briefly-encountered intruder.

 An extraneous offense is admissible if it has relevance apart from its tendency to prove the character of a person in order to

---

4. Pemelton's testimony does not establish that the bicycle and baseball cap belonged to the same owner.

5. Appellant claimed lack of notice that the State would offer the cap as evidence of other misconduct. *See* Tex.R.Crim.Evid. 404(b). The trial court sustained the objection on this basis.

show that he acted in conformity therewith. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990). A party may introduce extraneous misconduct evidence when it logically serves to make "more probable or less probable" an elemental fact; where it serves to make "more probable or less probable" an evidentiary fact that inferentially leads to an elemental fact; or where it serves to make "more probable or less probable" defensive evidence that undermines an elemental fact. *Id.* Evidence of other crimes may be admitted to show intent and identity unless the prejudicial effect substantially outweighs its probative value. *See Id.;* Tex. R.Crim.Evid. 404(b).

■ Whether objected-to evidence of other crimes has relevance apart from character conformity is a question for the trial court. *Montgomery*, 810 S.W.2d at 391. The trial court must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Id.* An appellate court should not reverse the trial court whose ruling was within the zone of reasonable disagreement. *Id.* An appellate court should not make a *de novo* review of the record with a view of making a wholly independent judgment whether the probative value of the extraneous act is substantially outweighed by the danger of unfair prejudice. *Id.* at 392. Factors for an appellate court to review in assessing the trial court's ruling include the probative effect of the evidence, the potential for unfair prejudice, and the proponent's need to introduce the extraneous offense. *Id.* at 395–397.

■ In the present case, as noted above, the trial court admitted the proffered evidence for the limited purposes of showing identity and intent. Initially, we find the trial court erred in admitting evidence regarding the stolen bicycle while excluding evidence regarding the stolen cap, if the purpose was to show identity. The bicycle would have been relevant to show identity if

the evidence had shown the bicycle and cap were stolen from the same person. But, because evidence about the cap's ownership was excluded, the jury had no way to connect the cap to the bicycle, and no way to establish the burglar's identity from the bicycle.

■ We now turn to the other basis for admission, that is, to show the intruder's intent. Ultimately we must determine whether the trial court erred in determining the probative value of this evidence (to show intent) was not substantially outweighed by its prejudice. We address the probative effect of the evidence, the potential for unfair prejudice, and the proponent's need to introduce the extraneous offense. *See Montgomery*, 810 S.W.2d at 395–397. With regard to probativeness, the State argues appellant's possession of the stolen bicycle makes it more probable that he entered the Websters' home with an intent to commit theft, an element of the offense which the State must prove. The trial court implicitly found the admitted evidence to be probative of appellant's intent, and appellant does not contend the evidence was irrelevant; therefore, we defer to the trial judge's determination of the relevance. *See Montgomery*, 810 S.W.2d at 391. Nonetheless, we find appellant's possession of a stolen bicycle to have, at best, slight probativeness or relevance to his intent at the Websters' house. *See generally Gilbert v. State*, 808 S.W.2d 467, 472–73 (Tex. Crim.App.1991).

■ We next consider unfair prejudice. The question is whether a jury would be more likely to draw an impermissible character conformity inference than the permissible inference for which the evidence is relevant and whether the extraneous offense distracts the jury from the specifically charged offense and invites them to convict on a moral or emotional basis rather than a reasoned response to the relevant evidence. *See Montgomery*, 810 S.W.2d at 395. In this regard, the State's evidence showed not only that appellant possessed a stolen bicycle but that the bicycle was stolen during a burglary, apparently less than two days earlier.[6] The

---

6. Anzaldua testified, "I got robbed." In context, it appears the twelve-year-old boy probably

meant the bicycle was stolen during a burglary of his home. If the bicycle was really taken during

logical inference is that appellant not only had a stolen bicycle but that he committed the other recent burglary. Such inference greatly enhances the probability that the jury would view appellant as a burglar in general. This is precisely the sort of inference based on character conformity that Rule 404(b) does not allow. *Gilbert*, 808 S.W.2d at 473. Accordingly, we find admission of the evidence was likely to unfairly prejudice appellant.

With regard to the State's need for this evidence, we conclude the State had no compelling need. The State's other intent evidence showed that the intruder scoped the Websters' house, rang the doorbell probably to see if anyone was home, and then entered through a window. A bedroom dresser was rummaged. Two gold items were missing. The intruder ran upon seeing a police officer. The intent of the intruder hardly seems in question. The State's need to admit evidence of an extraneous offense was slight at best. Moreover, we note the State proffered this evidence in its case-in-chief after presenting its other evidence. The complained-of evidence added very little to the State's case.

The prejudicial effect of this evidence is substantial. Appellant's defensive theory, developed through jury argument, was that he was not the intruder. Appellant's defensive theory was not based on lack of the requisite intent. Evidence that appellant had just two days earlier burglarized another house and stolen a bicycle from a twelve-year-old boy is prejudicial. This is particularly so when the State chose to offer the evidence through the child rather than his parents. While only a small portion of the State's case was devoted to developing the extraneous misconduct, we conclude the trial court erred in admitting the extraneous offense to show intent.

■■■ Finding error in the admission of evidence, however, does not end our analysis. We must next determine whether the error was harmless under Tex.R.App.P. 81(b)(2). We are required to calculate "as much as possible the probable impact of the error on

the robbery of a twelve-year-old boy, the preju-

the jury in light of the existence of the other evidence." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). The reviewing court should examine the source of the error, the nature of the error, the extent it was emphasized by the State, its probable collateral implications, how much emphasis a juror would probably place on the error, and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* The reviewing court should not focus on the weight of the other evidence of guilt, but rather on whether the error might possibly have prejudiced the jurors' decision-making. It should focus upon the process of trial, not the result. *Id.* The presence of overwhelming evidence may dissipate the effect of the error. *Id.*

■■■ The nature of the error here was evidentiary. The source of the error was the State's offer and the trial court's admission of evidence which should not have been admitted on the basis it was. The State mentioned the improper evidence twice in its jury argument, each time arguing that it showed the intruder's intent. The State did not seek to use the evidence for an improper purpose, nor seek to inflame the jury with this evidence.

In considering the weight a juror would place on this evidence and its probable collateral consequences, we note the trial court's charge instructed the jury to consider the evidence for only a limited purpose, and the State's jury argument confined the jury's use to the purpose stated. We also consider the strength of the State's case in assessing the error's effect. Appellant was identified by Officer Hernandez. Appellant was caught minutes after the burglary, wearing clothing which matched the description given by the Wahls. Appellant attempted to run from Officer Vasquez. These are highly incriminating facts which greatly diminish the impact of the error.

Finding the error harmless would not encourage the State to repeat the error with impunity. It must be remembered that if the trial court had admitted the additional extraneous offense evidence (about the stolen

dice would be even greater.

baseball cap), then the stolen bicycle would have been highly probative of identity, specifically linking appellant to the Websters' house. The error here thus arose, in part, because the trial court ruled favorably to appellant and limited the State's extraneous offense evidence.

Taking all these factors into consideration, we find that the error was harmless. Accordingly, we overrule appellant's second point of error. The judgment of the trial court is affirmed.

FEDERICO G. HINOJOSA, Jr., J., dissents.

FEDERICO G. HINOJOSA, Jr., Justice, dissenting.

I respectfully dissent. I agree that the trial court erred by admitting the evidence of extraneous conduct to show intent; however, I disagree with the majority's harm analysis. I cannot hold that the error was harmless beyond a reasonable doubt.

The majority correctly states the standard of review, as enunciated in *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989), we must apply in determining the harmfulness of an error in admitting evidence, yet misapplies the examination and neglects to calculate the probable impact of the error on the jury in light of the existence of the other evidence. The majority relies on the efficacy of the instructions given to the jury and the State's "confined" closing argument to speculate that the jury placed little or no weight on the complained-of evidence. The majority concludes that the "strength" of the State's case, including Officer Hernandez's identification, the matching description given by the complaining witnesses, and appellant's detention shortly after the crime, amounts to "highly incriminating facts which greatly diminish the impact of error." Without further evaluating the effect of the error, the majority essentially focuses on the weight of the other evidence of guilt rather than whether the error at issue might possibly have prejudiced the jurors' decision-making.

On this evaluation of the evidence, I disagree. The State's case rested on establishing the identity of the burglar and relied primarily on Sergeant Hernandez's identification. Without stronger identification testimony from the complaining witnesses, the extraneous offense evidence was necessary to link appellant to the crime at the Wahl's house. The prosecution clearly relied on the improper evidence when it made a more than passing reference to the extraneous offense in its final argument.

Applying the *Harris* standards to this case and concurrently recognizing that overwhelming evidence can be a factor to be considered, I do not conclude beyond a reasonable doubt that the erroneous introduction of the extraneous offense did not contribute to the appellant's conviction. Because I cannot hold that the error was harmless beyond a reasonable doubt, I dissent from the majority's opinion.