IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00215-CR

 

Charles Lester,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 18th District Court

Johnson County, Texas

Trial Court No. F40872

 



MEMORANDUM  Opinion










 

            Charles Lester was charged with two counts
of possession of a controlled substance, cocaine and methamphetamine, with the
intent to deliver.  A jury found him guilty of the lesser offenses of
possession of a controlled substance, cocaine and methamphetamine.  The jury
found an enhancement paragraph to be true and assessed punishment at 85 years
in prison.  We affirm.

            After conducting surveillance on
Lester’s residence, law enforcement officers obtained a search warrant and
entered the residence.  In the residence, they found scales, baggies, a drug
ledger, a loaded shot gun, over $1400 in cash, cocaine, and methamphetamine. 
The cocaine totaled 114.81 grams and the methamphetamine totaled 7.87 grams. 
Lester was arrested at the residence and admitted that the drugs found were his
and that he had the drugs to sell.

Hearsay

            In his first issue, Lester asserts
that the trial court erred in admitting testimony by N.H. Laseman, a deputy
chief with the Cleburne Police Department, over Lester’s hearsay objection. 
Specifically, Lester complains about Laseman’s testimony that he became
familiar with 1308 South Brazos[1]
because neighbors were complaining about drug activity and that drugs were
being sold in the street.

            Testimony by an officer that he went
to a certain place or performed a certain act in response to generalized
"information received" is normally not considered hearsay because the
witness should be allowed to give some explanation of his behavior.  Poindexter
v. State, 153 S.W.3d 402, 408 n. 21 (Tex. Crim. App. 2005).  But details of
the information received are considered hearsay and are inadmissible-unless the
officer's conduct has been challenged, for instance, as lacking probable
cause.  Id.  The appropriate inquiry focuses on whether the
"information received" testimony is a general description of possible
criminality or a specific description of the defendant's purported involvement
or link to that activity.  Id.  Laseman’s testimony that he became
familiar with 1308 South Brazos because neighbors were complaining about drug
activity and that drugs were being sold in the street is a general description
of “possible criminality” and is not hearsay.  Therefore, the trial court did
not err in overruling Lester’s objection.  His first issue is overruled.

            Lester also contends that Laseman’s testimony
regarding complaints that Lester was buying stolen property and selling drugs,
that drug users and women were coming and going from the residence, and that
burglaries were occurring in the area that had not happened before, was
hearsay.  However, Lester failed to preserve this complaint for our review
because he did not object to any of this testimony.  Tex. R. App. P. 33.1; Martinez v. State, 98
S.W.3d 189, 192 (Tex. Crim. App. 2003).  His second issue is overruled.  

            Lester further complains about
Laseman’s testimony regarding information he received that Lester possibly
bought stolen air conditioners.  Lester’s objection was sustained.  He did not
further pursue his objection to an adverse ruling.  To preserve a complaint for
review, a defendant must receive an adverse ruling on his objection.  Ramirez
v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991); Darty v. State,
709 S.W.2d 652 (Tex. Crim. App. 1986).  Therefore, Lester failed to preserve
his complaint because he did not receive an adverse ruling on his objection. 
Issue three is overruled.

            In his fourth issue, Lester argues
that testimony from Adam King, a supervisor with the S.T.O.P. Special Crimes
Unit, that Lester traded drugs for sex was inadmissible hearsay.  Lester
objected to King’s testimony and the objection was overruled.  However, Lester
elicited the same testimony later from King.  Overruling an objection to
evidence will not result in reversal when other such evidence was received
without objection, either before or after the complained-of ruling.  Lucero
v. State, 246 S.W.3d 86, 102 (Tex. Crim. App. 2008); Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998).  Lester’s fourth issue is
overruled.

Extraneous Offense Evidence

            In his fifth and final issue, Lester
argues that the trial court erred in admitting into evidence a shotgun found in
the master bedroom of Lester’s residence.  Specifically, he contends the
testimony about the shotgun and the admission of the shotgun itself were
inadmissible extraneous offense evidence.  

            The State initially asserts that
Lester failed to preserve this issue because he did not continue to object to
the testimony about the shotgun and did not object when the shotgun was
admitted into evidence.  With two exceptions, the law in Texas requires a party
to continue to object each time inadmissible evidence is offered.  Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); Ethington
v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).  The two exceptions
require counsel to either (1) obtain a running objection, or (2) request a
hearing outside the presence of the jury.  Id.  Lester requested and
obtained a hearing outside the presence of the jury regarding the admissibility
of the shotgun.  After the hearing, the trial court overruled his objections. 
Thus, his issue as to the admission of the shotgun is preserved.  

            Generally, evidence of extraneous
offenses may not be used against the accused in a criminal trial.  Daggett
v. State, 187 S.W.3d 444, 450 (Tex. Crim. App. 2005); accord Gilbert
v. State, 808 S.W.2d 467, 471-72 (Tex. Crim. App. 1991).  A trial court's
ruling on the admissibility of extraneous offenses is reviewed under an abuse
of discretion standard.  Prible v. State, 175 S.W.3d 724, 731 (Tex.
Crim. App. 2005); accord Montgomery v. State, 810 S.W.2d
372, 391-392 (Tex. Crim. App. 1991).  We assume though, without deciding, that
the trial court erred in admitting evidence of the shotgun and move to a harm
analysis.

            Texas Rule of Appellate Procedure
44.2(b) provides that an appellate court must disregard a non-constitutional
error that does not affect a criminal defendant's "substantial
rights."  Tex. R. App. P.
44.2(b).  Under that rule, we may not reverse for non-constitutional error if,
after examining the record as a whole, we have a fair assurance that the error
did not have a substantial and injurious effect or influence in determining the
jury's verdict.  Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App.
2004).  The erroneous admission of an extraneous offense is non-constitutional
error.  Coleman v. State, 188 S.W.3d 708, 726 (Tex. App.—Tyler 2005,
pet. ref'd); see Herrera v. State, No. 10-06-00181-CR, 2007 Tex. App. LEXIS 910, *12 (Tex. App.—Waco Feb. 7, 2007, no pet.) (mem. op.).

            Lester was charged with possessing
cocaine and methamphetamine with the intent to deliver those drugs.  Even with
the additional evidence of a vicious dog kept by Lester, a surveillance camera
outside his residence, scales, baggies, and a drug ledger, the jury found him
guilty of the lesser offenses of possession of cocaine and methamphetamine. 
The jury did not find that he had the intent to deliver the drugs.  

            Lester argues that his lengthy term of
confinement was a result of the admission of the shotgun.  We do not agree. 
Although the State reintroduced all the testimony and evidence from the
guilt/innocence phase, the fact that Lester had “guns” was only mentioned in
passing in the opening portion of the State’s final argument.  What possibly
influenced the jury in their assessment of an 85 year prison term was that
Lester had been previously convicted twice for possession with intent to
deliver a controlled substance.  He was placed on probation for one of the
convictions, which was revoked.  The jury also found the enhancement paragraph
of a conviction for possession of a controlled substance to be true.

            After reviewing the record as a whole,
we have a fair assurance that the admission of the shotgun did not have a
substantial and injurious effect or influence on the jury’s verdict.  Lester’s
fifth issue is overruled.

            Having overruled each of Lester’s
issues on appeal, we affirm the trial court’s judgment.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

            (Justice
Vance concurs in the judgment with a note)

Affirmed

Opinion
delivered and filed August 6, 2008

Do
not publish 

[CRPM]

 

 

            *
“(Because I read Poindexter and Schaffer v. State, 777 S.W.2d 111
(Tex. Crim. App. 1989), upon which Poindexter relies, differently than
the majority, I believe the trial court erred in allowing hearsay statements of
Officer Laseman into evidence.  Based on a review of the entire record,
however, I would find the error harmless, so I concur in the judgment.)”









[1] This
is Lester’s residence.








ly: 'CG Times', serif">      Relators' motion alleged that the Agency Agreement was governed by the FAA because the
subject of the contract involves interstate commerce. Attached to the motion is Pugh's affidavit
stating that the Agreement "evidences a transaction involving commerce among the several States
because the insurance policies made the subject of the Agency Agreement were issued to Texas
residents by Metropolitan, a Rhode Island Corporation." Harmon did not controvert the affidavit;
thus, the FAA applies to the agreement.


 Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266,
269-70 (Tex. 1992) (orig. proceeding).
      We next look to whether Harmon's claims are within the scope of the Agency Agreement. 
As we have noted, Harmon alleges in three causes of action that Relators: (1) negligently
misrepresented their willingness to write insurance for his clients; (2) tortiously interfered with
his prospective business relations with existing clients who would have otherwise continued to
procure insurance through Harmon; and (3) conspired to violate section 21.11-1 of the Texas
Insurance Code by applying economic coercion to terminate the Agency Agreement by mutual
agreement rather than by Relators' unilateral action. 
      Harmon asserts that these causes of action are "separate and distinct" from the claims arising
out of Relators' termination of the agreement. He says that Relators have "committed torts that
will leave [his] clients without insurance" and that forcing his clients to change insurance carriers
has caused and will cause his clients to place their insurance with his competitors. Relators argue
that, but for the Agency Agreement, there would be no disputes between the parties.
      Under the FAA, any doubts about whether the claims fall within the scope of the agreement
must be resolved in favor of arbitration. Prudential Securities, Inc. v. Marshall, 909 S.W.2d 896,
899 (Tex. 1995) (orig. proceeding) (citing Moses H. Cone Memorial Hosp., 460 U.S. at 24-25,
103 S.Ct. at 941-42). The policy in favor of enforcing arbitration agreements is so compelling
that a court should not deny arbitration "unless is can be said with positive assurance that an
arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." 
Id. (citing Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990)). In determining
whether a claim falls within the scope of an arbitration agreement, we focus on the factual
allegations of the complaint rather than the legal causes of action asserted. Id. at 900 (citing Jack
B. Anglin Co., 842 S.W.2d at 271). The burden was on Harmon to show that his claims fell
outside the scope of section X of the agreement. See id.      Harmon does not dispute that he has
arbitrable claims—the termination based on "unfavorable property loss experience" and Relators'
failure to comply with the Insurance Code. However, he argues that his claims of negligent
misrepresentation, tortious interference, and conspiracy do not arise "out of and under" the
agreement. Looking at the factual allegations in Harmon's petition, we cannot conclude with
"positive assurance" that the claims alleged are not "factually intertwined" with the arbitrable
claims. Id. 
      Thus, Relators have established that the Agency Agreement exists under the FAA and that the
claims raised are within the scope of that agreement. Respondent had no discretion but to compel
arbitration and stay the proceedings pending arbitration. Cantella, 924 S.W.2d at 944-45.


 
       We conditionally grant the writ of mandamus and direct Respondent to order that all claims
proceed to arbitration. Because we are confident that Respondent will comply with our decision,
the writ will issue only if he fails to do so.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Writ of mandamus conditionally granted
Opinion delivered and filed November 20, 1996
Publish