[JH1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-037-CR

 

 

SCOTT ANTHONY SARTAIN                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

Appellant Scott Anthony Sartain appeals from his conviction
and 120-day sentence for resisting an arrest or search.  In his sole point, appellant argues that the
evidence was legally and factually insufficient to establish that the arresting
officer was Officer AJ. Bell,@ to establish that
he struck Officer Bell with his hand, to establish that he used force, and to
establish that Officer Bell was attempting to arrest or search him.  We affirm.               








II.  Background Facts

On September 27, 2005, Arlington
Police Officer J. Cleat Bell was patrolling an area in east Arlington that was
known for game rooms and criminal activity, including narcotics offenses, car
thefts, and violent crimes.  At
approximately 1:00 a.m., Officer Bell, acting on information from an informant
regarding a potential drug dealer, drove his police cruiser to a game room
parking lot to look for a specific vehicle. 
During this investigation, Officer Bell noticed appellant sitting in a
car.  Because of his training and
experience and the fact that appellant was sitting in a car without air
conditioning on a hot night in an area known for narcotics dealing, Officer
Bell suspected that drug activity was occurring.[1]  In addition to these suspicions, Officer Bell
also decided to approach appellant to ensure he was not passed out or
intoxicated. 








After parking his police car,
Officer Bell walked up to the driver=s side of appellant=s car and saw appellant talking with two females parked in the next
space.  Officer Bell asked appellant why
he was waiting in the parking lot, and appellant responded that he was waiting
for his friend ABrian@ to complete his shift as a manager at one of the game rooms.  Officer Bell testified that he did not know
Brian personally, but knew of Brian because the police suspected him of dealing
drugs in the game room he allegedly managed.

Because the parking lot was
in a location known for narcotics dealing, there were three people (appellant
and the two females) in the lot, and the lot was not well-lighted, Officer Bell
decided to conduct a pat-down search of appellant for weapons.[2]  Officer Bell asked appellant to step out of
the car, walk to the trunk, place the objects in his hands on the trunk, and
then place his hands on the trunk. 
Appellant complied with every instruction except oneBhe retained a white envelope in his left hand and put it Aback behind his leg trying to hide it@ from the officer.[3]








Officer Bell again instructed
appellant to place his left hand on the trunk. 
When appellant did not comply, Officer Bell grabbed his left hand.  In response, appellant turned, looked over
his left shoulder, and ran.  Officer Bell
immediately chased appellant and caught him thirty to forty yards away.  When Officer Bell reached out to grab the
back of appellant=s shirt,
appellant fell forward into a parked vehicle. 
Officer Bell stated that appellant tensed his muscles up, struggled, and
tried to pull away.  While Officer Bell
tried to get appellant Ainto the
position to do a straight arm bar takedown,@ two other police officers arrived. 
Appellant=s struggling
caused all three officers to fall to the ground in a Abig dog pile.@  Officer Bell later testified that, during the
struggle, appellant struck him numerous times. 
Specifically, appellant=s Aarms were
flailing around, his legs were kicking.@  Officer Matt Henderson and
Officer Bell=s
testimonies at trial differed regarding whether appellant was face-down on the
ground, laying on his hands, or sitting on top of Officer Bell.  However, both officers agreed that appellant Aput up a very good fight,@ did not want to be arrested, and required multiple officers to
complete the arrest.  

A jury found appellant guilty of resisting an arrest or
search, and he appeals from his conviction and 120-day sentence. 

III.  Appellant=s Four Sub-Points

A.  Standard of
Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).








The sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik,
953 S.W.2d at 240.  The law as
authorized by the indictment means the statutory elements of the charged
offense as modified by the charging instrument. 
See Curry, 30 S.W.3d at 404.

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@ Johnson, 23 S.W.3d at 8. 
Thus, we must give due deference to the fact-finder=s determinations, Aparticularly those determinations concerning the weight and
credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which
ground.  Goodman v. State, 66
S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7.

 








B.  Applicable Law

A person resists a search or
arrest if he intentionally obstructs a person he knows is a peace officer from
effecting an arrest or search by using force against that officer.  Tex.
Penal Code Ann. ' 38.03(a)
(Vernon 2003).  It is no defense to
prosecution that the arrest or search was unlawful.  Id. ' 38.03(b); see White v. State, 601 S.W.2d 364, 366 (Tex. Crim.
App. [Panel Op.] 1980).

C.  Appellant=s First Sub-Point








In his first sub-point, appellant argues that the evidence
was legally and factually insufficient to establish that the arresting officer
was Officer AJ. Bell@ as indicated in
the indictment and the jury charge.[4]  Appellant notes that there Ais no evidence
anywhere in the record that the officer=s name was J.
Bell,@ and instead,
Officer Cleat Bell was the arresting officer who was allegedly struck and
ultimately testified at appellant=s trial.

We agree with appellant that Officer Bell did indeed
identify himself as AOfficer Cleat Bell with the Arlington
Police Department.@ 
Further, Officer Bell never testified that AJ@ was an initial to
one of his names or that his given first name began with a AJ.@  In fact, no testimony reflected that Officer
Bell was anyone other than Officer Cleat Bell.  Appellant argues that this variance between
the indictment and the proof at trial causes the evidence showing that he
assaulted Officer AJ.@ Bell to be
legally and factually insufficient.  We
disagree.

As a general rule, a variance
between the indictment and evidence at trial is fatal to a conviction.  Stevens v. State, 891 S.W.2d 649, 650
(Tex. Crim. App. 1995).  This is because
due process guarantees the defendant notice of the charges against him.  Id. 
Due process is violated when an indictment alleges one offense, but the
State proves another.  Id.








However, not every variance
between the evidence at trial and the indictment is fatal to the sufficiency of
the evidence.  Id.  Only a material variance is fatal.  Id.  The object of the doctrine of variance between
allegations of an indictment is to avoid surprise, and for a variance to be
material, it must mislead the party to his prejudice.  Id.; see Gollihar v. State, 46
S.W.3d 243, 244-45 (Tex. Crim. App. 2001) (holding that a hypothetically
correct jury charge, as used to measure sufficiency of the evidence to support
conviction, need not incorporate allegations that give rise to immaterial
variances between indictment and proof). 


Variance between the victim=s name in an indictment and proof at trial may be immaterial if
the defendant was not surprised by the proof at trial.  See Fuller v. State, 73 S.W.3d 250,
254 (Tex. Crim. App. 2002) (holding that the prosecution=s failure to prove the victim=s name exactly as alleged in the indictment does not make the evidence
insufficient under Gollihar).  In Fuller,
the defendant was accused of injuring AOlen M. Fuller,@ an elderly
individual.  Id. Evidence at trial
only reflected the victim=s name as AMr. Fuller@ and ABuddy,@
however.  Id.  The court held that the variance between the
indictment and the proof at trial was immaterial because there was no
indication in the record that appellant did not know whom he was accused of
injuring.  See id.; Gollihar,
46 S.W.3d at 257.  Further, the variance
did not subject appellant to another prosecution for the same offense.  See Fuller, 73 S.W.3d at 254; Gollihar,
46 S.W.3d at 257.   








Here, there was no evidence
at trial showing that appellant did not know who had accused him of resisting
arrest or search.  Further, an
Officer Bell testified against appellant, the court reporter typed in Officer
Bell=s name as AOfficer J.
Cleat Bell,@ appellant=s attorney subpoenaed records from AOfficer Cleat Bell,@ and the prosecutor referred to AOfficer J. Bell@ without
objection throughout the trial.[5]  When considering all of these factors,
appellant was not surprised and claimed no surprise by the variance between the
indictment and the proof at trial.  See
Fuller, 73 S.W.3d at 254; Gollihar, 46 S.W.3d at 257.         Further,
for appellant to succeed on his legal insufficiency claim, the name of the
victim must be a substantive element of the criminal offense as defined by
state law. 
Fuller, 73 S.W.3d at 252.  In Fuller, the Court of Criminal Appeals
held that the victim=s name was not a substantive element of
the crime because the penal code defined that offense as A>injury to an
elderly individual,=@ not A>injury to an
elderly individual named Olen M. Fuller.=@  Id. at 253.  The same logic applies here.








Appellant was charged under section 38.03(a) of the penal
code, which provides that a person resists arrest if he intentionally obstructs
a person he knows is a peace officer from effecting an arrest by using force
against that officer.  Tex. Penal Code Ann. ' 38.03(a).  The penal code does not require the
identification of the police officer as a substantive element of the crime of
resisting a search or arrest; the State must only prove that appellant
obstructed a person he knows to be a police officer.  See Fuller, 73 S.W.3d at 253.  Here, the two other
officers also testified that while they all were trying to arrest appellant,
appellant struck AOfficer Bell,@ a peace
officer.  

Because variances of this
type are not material given the present facts, and only material variances
render evidence insufficient under Gollihar, we do not agree with
appellant that the State failed to show that appellant struck an Officer
Bell.  See id.; Gollihar,
46 S.W.3d at 257.  Accordingly, we
overrule appellant=s first
sub-point.

D.  Appellant=s Second Sub-Point

In his second sub-point, appellant argues that the evidence
was legally and factually insufficient to establish that he used force by Astriking J. Bell
with his hand,@ as alleged in the information and charged
in the jury charge. (Emphasis added.) 
Appellant notes that the testimony at trial did not establish that he
struck Officer Bell with his hand, but instead only showed that he
either flailed his arms and feet around or laid on his hands.  According to appellant, this variance between
the proof at trial and the indictment is fatal. 
Again, we disagree.  








When the State asked Officer Bell if he had been struck by
appellant=s hands or feet during the confrontation,
Officer Bell responded, AYes. 
I got struck numerous times from the time I caught up to him to the time
he was handcuffed.  His arms were
flailing around, his legs were kicking. 
So I got struck numerous times.@

Officer Matt Henderson testified that appellant was on top
of and Apushing up against@ Officer Bell at
various times.  Further, Officer
Henderson and another officer had to get involved in the arrest to gain control
of appellant and stop him from flailing his arms.  Officer Henderson testified that police
officers usually try to gain control over a suspect by grabbing their hands,
and after a struggle, he was eventually able to place a cuff on appellant=s Aleft arm or left
wrist.@








Officer Bell also testified that appellant was Aface down@ and Alaying on both of
his hands@ during the entire encounter.  Appellant contends that because Officer Bell=s testimony
regarding appellant=s hand placement differed from his earlier
testimony and from Officer Henderson=s testimony, the
variance rendered the evidence of him striking Officer Bell with his hand
insufficient.  However, the jurors are
responsible for resolving conflicting testimonies.  See Johnson, 23 S.W.3d at 8.  While Officer
Bell=s testimony regarding where appellant=s hands were during the arrest was inconsistent, the jurors could have
concluded that appellant=s hands were
not pinned to the ground during the entire struggle or during the moments where
he flailed his arms.  The jurors could
have also concluded that appellant=s hands were the primary danger to Officer Bell, as Officer Henderson
focused his own efforts on trying to cuff appellant=s wrists.  Further, because
appellant was sitting on top of Officer Bell at some point during the
confrontation, the jurors could have concluded that he used his hands to push
up against the officer.  Accordingly, we
overrule appellant=s second
sub-point.

E.  Appellant=s Third Sub-Point

In his third sub-point, appellant argues that the evidence
was legally and factually insufficient to establish that he used force against
Officer Bell, as alleged in the information and charged to the jury.  Appellant notes that the testimony at trial
did not show that he used force against Officer Bell, but only that he
attempted to get away from the officers by pulling and pushing against them and
by flailing his arms.  According to
appellant, because none of this force was directed at the officers, his conduct
constituted only Apassive resistance@ which is
insufficient to sustain a conviction for resisting arrest under 38.03(a) of the
penal code.  See Tex. Penal Code Ann. ' 38.03(a).  We disagree.








A person can forcefully resist an arrest without
successfully making physical contact with the officer.  See Haliburton v. State, 80 S.W.3d
309, 312-13 (Tex. App.CFort Worth 2002, no pet.) (holding that a
defendant=s act 
of Akicking at@ an officer
constituted force even though the kick did not connect).  Further, one who runs
away or makes an effort to shake off an officer=s detaining grip may be guilty of evading arrest under section 38.04,
and not responsible under section 38.03, but only if there has been a non‑forceful
evasion of arrest.  Tex. Penal Code Ann. '' 38.03, 38.04; Bryant v. State, 923 S.W.2d 199, 208 (Tex. App.CWaco 1996), pet. ref=d, 940 S.W.2d 663 (Tex. Crim. App.
1997).  However, one who uses force to
shake off an officer=s detaining
grip, whether by pushing or pulling, may be guilty of resisting arrest under
section 38.03.  See Bryant, 923
S.W.2d at 208; see also Torres v. State, 103 S.W.3d 623, 627 (Tex. App.CSan Antonio 2003, no pet.) (holding that a defendant forcefully
resisted arrest by pulling his arms to avoid being handcuffed and then by
hitting the officer=s arm
away).  Further, when a defendant
thrashes his arms and legs and is combative towards an officer, he forcefully
resists arrest.  See Broughton v.
State, 631 S.W.2d 818, 820 (Tex. App.CFort Worth 1982, no pet.).  








Here, while the officers
agreed that appellant=s primary
motivation seemed to be to escape, they also agreed that appellant not only
flailed his arms during the confrontation, but also struck Officer Bell
numerous times and pushed up against him. 
Further, appellant=s resistance
was so strong that it required three police officers to restrain him.  When the officers first attempted to restrain
appellant, everyone fell in a Abig dog pile@ because of
the struggle.  Amidst the struggle,
Officer Henderson went to check on the two women. When he returned to the
confrontation, however, he had to continue to assist the other officers because
they had been unable to get appellant under control.         The
evidence here establishes that appellant did more than engage in passive
resistance; he flailed his arms at Officer Bell while attempting to
escape.  Such actions constitute force
against the arresting officer.  See Haliburton, 80 S.W.3d at
312-13.  Accordingly, we overrule
appellant=s third sub-point. 

F.  Appellant=s Fourth Sub-Point








In his fourth sub-point, appellant argues that the evidence
was legally and factually insufficient to establish that he intentionally or
knowingly resisted an arrest or search because Officer Bell was not arresting
or formally searching him and had no legal reason to do so.  In his
brief, appellant
first questions the legality of the pat-down search.  However, it is no defense to prosecution
under section 38.03(a) that the arrest or search was unlawful.  See Tex.
Penal Code Ann. ' 38.03(b); White, 601 S.W.2d at
366; Solis v. State, 704 S.W.2d 883, 885 (Tex. App.CCorpus Christi
1986, pet. ref=d) (holding that once the defendant used
force against the officer, the legality of the arrest became immaterial because
of the resistance). 

Appellant next asserts that
he did not intentionally or knowingly resist an arrest or search because
Officer Bell was only conducting a pat-down for weapons when appellant
attempted to flee.  Appellant further
reasons that, under section 38.03(a), any resistance to a search must be to a Atraditional@ search and
not a search incident to an investigative detention or stop.  Appellant cites no authority in support of
this assertion. 

The Eastland Court of Appeals
has held that a police officer was Aeffecting a search@ when the defendant resisted a pat-down search of his person incident to
an investigatory detention.  Jackson
v. State, 993 S.W.2d 162, 163-65 (Tex. App.CEastland 1999, no pet.).  The
court reasoned that, as such, the accused was culpable of the offense of resisting arrest.  Id.

We agree with the court=s analysis in Jackson.  See
id.  We can perceive no reason why a pat-down or frisk should
have a lesser consequence to one who resists such a search.  Appellant
does not contend in his brief that the evidence here fails to demonstrate that resistance to a pat-down search occurred.  Clearly, under any evidentiary standard,
appellant used force to obstruct a search. 
Accordingly, we overrule appellant=s forth sub-point. 








IV.  Conclusion

Applying the appropriate
standards of review, we hold that the evidence is legally and factually
sufficient to support appellant=s conviction for resisting arrest or search.  We overrule appellant=s sole point and affirm the trial court=s judgment.  

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

 

DAUPHINOT,
J. filed a dissenting opinion.

 

PUBLISH


 

DELIVERED:
June 7, 2007











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-037-CR

 

 

SCOTT ANTHONY SARTAIN                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

I must respectfully dissent
from the majority=s thoughtful
opinion because I cannot agree that the State is not bound by its indictment or
information in determining the sufficiency of the evidence.  The majority holds that the evidence is
sufficient to prove that Cleat Bell and J. Bell are the same person because the
State referred to the officer as J. Bell, even though the witness/complainant
testified that his name was Cleat Bell.  








AEverything should be stated in an indictment which is necessary to be
proved.@[1]  The rules with respect to
allegations in an indictment and the certainty required apply also to an
information.[2]  It is well‑settled that the purpose of
a charging instrument is to give the defendant notice of the specific offense
with which he is charged and to enable the court, upon conviction, to pronounce
the proper judgment, and to enable the accused to plead the judgment that may
be given upon it in bar of any further prosecution for the same offense.[3]  A
conviction can never rest upon conduct which is not a criminal offense, or in
whole or in part upon conduct not alleged in an indictment or information.[4]








An essential element of the offense of resisting an arrest or search
is that  the actor Aintentionally prevents or obstructs a person he knows is a peace
officer . . . from effecting an arrest, search, or transportation of the actor
. . .  by using force against the peace
officer.@[5]  An essential part of the
investigation and preparation for trial, then, is learning whether the person
named in the information is indeed a peace officer or whether it would be
readily apparent that the complainant was a police officer.

Unlike the situation in Fuller v. State,[6] there is no evidence that Officer J. Bell or
Officer Cleat Bell is Appellant=s father.  There is no evidence
that the two or three men are related in any way, nor is there evidence that
they knew each other before the offense date. 
The court reporter recorded the officer=s name as J. Cleat Bell, but we have no idea why, and the reporter=s record was not evidence considered by the jury in reaching its
verdict.  The prosecutor may have called
J. Bell to the stand, but the record is silent as to whether the bailiff sought
out the witness or whether some other person did.  The record also does not tell us whether the
bailiff or some other person simply called out for ABell.@  The rule had been invoked.








It is well-established law that what the lawyers say is not
evidence.  No one testified that Cleat
Bell and J. Bell were the same person.  I
also note that Bell is a well-known name in law enforcement in this area.  Officer John Bell is the name of an Arlington
police officer who was shot after a bank robbery.[7]  It is
also the name of an Arlington homicide detective (who may or may not be the
same officer who was shot several years ago).[8]  Another Officer Bell was named in an opinion
as a quick-thinking Hurst police officer.[9]  Additionally, Bell is not an unusual
name.  Many people named Bell are not
connected with law enforcement.








If, as the majority argues, the name of the person who the State
alleges is a peace officer is of no import, then why name anyone at all?  The majority suggests that we should hold the
evidence sufficient if the State got close to proving its case because it got
the last name right.  Is the State
required only to prove that someone named Bell was a peace officer and that
Appellant struck him?  The State proved
that Cleat Bell was a peace officer.  The
State did not prove that J. Bell was a peace officer.  If it is sufficient to plead, as the majority
suggests, that Appellant struck Asome police officer,@ then does it matter whether the proof shows one of his names is Bell
or whether it is Bob Smith or Sally Clark? 
The sufficiency of the evidence is measured against the hypothetically
correct jury charge as measured against the hypothetically correct indictment
or information.[10]  Both the jury charge and the information
refer only to J. Bell.

Contrary to the majority=s argument, a defendant does not have to show surprise when the State
fails to prove its case.  The defendant
merely argues that the State failed to sustained the burden of proof that the
State assumed.  The defendant is not
required to do anything to preserve a sufficiency claim in a criminal case.[11]








Because no evidence in the record reflects that J. Bell and Cleat Bell
are two names for the same person, the information naming J. Bell as the
complainant does not protect Appellant from again being placed in jeopardy of
this same offense should Cleat Bell be named as the complainant in a later
information.[12]  Nor is there any evidence that J. Bell is a
police officer.








The majority in the case now before this court appears to shift the
burden of proof from the State to Appellant, suggesting that Appellant failed
to prove below that J. Bell and Cleat Bell were not the same person and failed
to object when the prosecutor spoke of J. Bell. 
Or, perhaps, the majority is making a case for the civil concept of
trial by consent.  That is, because
Appellant did not object when J. Bell became Cleat Bell, perhaps the majority
contends that Appellant implicitly consented to a trial amendment of the
information.  Criminal law does not
recognize trial by consent except when a defendant affirmatively waives
indictment and consents to trial on information or when a defendant agrees to
amendment of the charging information during trial.[13]  Such
agreement must be clear and unambiguous and not the result of a failure to
object.[14]  Consequently, Appellant could not have
implicitly consented.

No evidence in the record shows that J. Bell and Cleat Bell are the
same person or that J. Bell is a police officer; I therefore believe that we
must hold that the evidence is legally insufficient to support Appellant=s conviction.  Because the
majority does not, I must respectfully dissent.

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED: June 7, 2007











[1]Officer
Bell was not looking for appellant or for appellant=s
vehicle when he first arrived at the lot. 






[2]Officer
Bell conceded that he did not have probable cause or reasonable suspicion that
would allow him to arrest appellant or ask appellant to exit the car.





[3]The
officers later determined that appellant was holding a folded up pay stub with
methamphetamine in it.





[4]The
information alleged that appellant did, 

 

then
and there intentionally prevent or obstruct J. Bell, a person he knew to be a
peace officer, from effecting an arrest or search of said defendant, by using
force against said peace officer, to wit: by striking J. Bell with his hand.

 

The
jury charge required the jury to find the following facts beyond a reasonable
doubt before conviction:

 

Now, therefore, if you find and believe from the evidence beyond a
reasonable doubt that the Defendant, SCOTT ANTHONY SARTAIN . . . did then and
there intentionally prevent or obstruct J. Bell, a person he knew to be a peace
officer, from effecting an arrest, or search, of SCOTT ANTHONY SARTAIN, by
using force against said peace officer, to wit: by striking J. Bell with his
hand, you will find the Defendant guilty as charged. 

 





[5]The
dissent theorizes that we may be Amaking a case for the civil
concept of trial by consent@ because we note that
appellant never objected to the prosecutor=s use of the name AOfficer
J. Bell.@  On the contrary, we point this out to support
the conclusion that appellant had notice of his charged offense because he was
informed that he struck a police officer with the last name ABell@
while the officer was attempting to arrest him.





[1]Tex.
Code Crim. Proc. Ann. art. 21.03 (Vernon 1989).





[2]Id. art.
21.23.





[3]Lehman
v. State, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990); see
Tex. Code Crim. Proc. Ann. arts.
21.04, 21.11.





[4]Lawton
v. State, 913 S.W.2d 542, 551 (Tex. Crim. App. 1995), cert.
denied, 519 U.S. 826 (1996), overruled on other grounds, Mosley
v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).





[5]Tex.
Penal Code Ann. ' 38.03(a) (Vernon 2003).





[6]73 S.W.3d 250, 251
(Tex. Crim. App. 2002).





[7]Gilbert
v. State, 781 S.W.2d 296, 297 (Tex. App.CFort
Worth 1988) (AHe
[Kenneth Wayne Dryden] shot Arlington Police Officer John Bell after a bank
robbery in Arlington two and a half years ago.@), aff=d, 808
S.W.2d 467 (Tex. Crim. App. 1991).





[8]See
Henstenberg v. State, No. 02-05-00370-CR, 2007 WL 1441034 at *1_
(Tex. App.CFort
Worth May 17, 2007, no pet. h.).





[9]Carruth
v. State, 762 S.W.2d 364, 366 (Tex. App.CFort
Worth 1988, no pet.) (AOfficer
Bell, who was also an off‑duty Hurst police officer, pursued Goodspeed
and arrested her.@).





[10]See
Fuller, 73 S.W.3d at 260 (Womack, J., concurring) (AThe
court of appeals found it unclear whether Malik would use a
hypothetically correct jury charge that was based on a hypothetically correct
indictment or one that was based on the actual indictment.@); Rosales
v. State, 4 S.W.3d 228, 235 n.3 (Tex. Crim. App. 1999) (Myers, J.,
concurring) (ABy
extending Malik to the context presented in this case, the majority
appears to have created a >hypothetically correct
indictment=
doctrine.@), cert.
denied, 531 U.S. 1016 (2000).





[11]Moff
v. State, 131 S.W.3d 485, 488‑89 (Tex. Crim. App.
2004).   





[12]Gollihar
v. State, 46 S.W.3d 243, 258 (Tex. Crim. App. 2001)
(citing United States v. Apodaca, 843 F.2d 421, 430 n.3 (10th Cir.), cert.
denied, 488 U.S. 932 (1988), for the proposition that the Aentire
record, not just indictment, may be referred to in protecting against double
jeopardy in event of subsequent prosecution@).





[13]See
Garcia v. Dial, 596 S.W.2d 524, 527 (Tex. Crim. App. [Panel
Op.] 1980) (orig. proceeding) (stating that Ait is well settled that a
valid indictment, or information if indictment is waived, is essential to the
district court's jurisdiction in a criminal case@); Weatherby
v. State, 61 S.W.3d 733, 739 (Tex. App.CFort Worth 2001, pet. ref=d)
(Dauphinot, J., concurring) (AThere is no such thing as
trial by consent in a criminal case.@).





[14]See
Riney v. State, 28 S.W.3d 561, 565-66 (Tex. Crim. App. 2000) (AIf
approved, the amended photocopy of the original indictment need only be
incorporated into the record under the direction of the court, pursuant to
Article 28.11, with the knowledge and affirmative assent of the defense.@).   















 [JH1]

Majority by Justice
Livingston; Dissent by Justice Dauphinot