OPINION HEADING PER CUR 









                NO. 12-06-00021-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

 

JAMES
EARL SMITH,        §          APPEAL FROM THE 241ST

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM
OPINION

            A jury convicted Appellant James Earl Smith of unlawful
possession of a firearm by a felon, a third degree felony, and assessed the
maximum punishment of imprisonment for ten years and a $10,000 fine.  In four issues, Appellant challenges the
legal and factual sufficiency of the evidence, contends he did not receive
effective assistance of counsel, and maintains the trial court erred in
admitting gruesome photographs of the corpse of Appellant’s murdered wife.  We affirm.

 

Background

            Appellant stipulated at the outset of the trial that he
had been convicted of a felony and had not been released from parole
supervision for five years.

            The evidence at trial showed that Appellant made a 9-1-1
call to report that his wife had been murdered. 
Sheriff’s deputies dispatched to investigate found the body of Appellant’s
wife, dead from a shotgun wound to her face. 
Appellant told the officers that there had been two guns in the house, a
shotgun bought by his wife and a pistol that belonged to his stepson.  A 9mm semiautomatic Ruger pistol was
discovered in the linen closet between Appellant’s bedroom and the living
room.  The pistol and its clip were
tested for fingerprints, but no identifiable prints were recovered.  Detective Joe Rasco of the Smith County
Sheriff’s Department testified that “the pistol was not associated with the
homicide.”  








            Lasabra Johnson, Appellant’s stepson, told the jury that
he owned the Ruger pistol, but that he had given it to his mother in Shreveport
because the Air Force was transferring him to Alaska.  Appellant was not with his mother when he
gave her the pistol.  Lasabra Johnson
testified that his mother kept the shotgun in plain view in the bedroom where
she and Appellant slept.

            Mary Anderson testified that she was Appellant’s
girlfriend.  She told the jury that
Appellant had told her he owned two guns that “his son” had given him.

            Detective Gerald Caldwell interviewed Appellant shortly
after his wife’s murder.  He testified
that he thought Appellant’s calm, unemotional demeanor during the interview was
strange because “as far as I knew, [he was] the last person to see his wife
alive and the first person to find her that morning.”  On cross examination, Appellant’s attorney
asked Detective Caldwell the following question: “Now Detective, he was not the
last person to see his wife alive.  The
killer was.  Wouldn’t you agree with me
on that statement?”  The detective
replied, “Yeah.”  On redirect
examination, Detective Caldwell was allowed to testify, over objection, that
based on everything he knew, he believed Appellant was his wife’s murderer
although he lacked sufficient proof to charge him.  

            Chester Webb testified, over objection, that at a family
gathering on Labor Day in 1999, Appellant pushed him down and then went back in
his house and got a shotgun.  Appellant
returned with a single shot shotgun, not seeing Webb, and fired the shotgun
into the air from his porch.

            Detective Joe Rasco made a thorough investigation of the
scene of the murder of Appellant’s wife. 
Through Detective Rasco’s testimony, over defense objection, photographs
of the victim were introduced into evidence showing the effect of the fatal
shotgun wound to her face.  

 

Legal and Factual Sufficiency of the Evidence

            In reviewing a legal sufficiency challenge, an appellate
court must view the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found all of the
essential elements of the charged offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sanders v. State,
119 S.W.3d 818, 820 (Tex. Crim. App. 2003). 
In a factual sufficiency review, the court should view the evidence in a
neutral light and ask whether a jury was rationally justified in its finding of
guilt beyond a reasonable doubt.  Watson
v. State, 204 S.W.3d 404, 413-14 (Tex. Crim. App. 2006).  The court should not reverse a case because
of the factual insufficiency of the evidence unless it can say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict. 
Id. at 417.  “The
difference between the two standards is that the [legal sufficiency standard]
requires the reviewing court to defer to the jury’s credibility and weight
determinations while the [standard for factual sufficiency] permits the
reviewing court to substitute its judgment for the jury’s, ‘albeit to a very
limited degree.’” Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006).  

Applicable Law 

            A person who has been convicted of a felony commits an
offense if he possesses a firearm (1) after conviction and before the fifth
anniversary of the person’s release from confinement following conviction of
the felony or the person’s release from supervision under community
supervision, parole, or mandatory supervision, whichever date is later, or (2)
after the period described by subdivision (1), at any location other than the
premises at which the person lives.  Tex. Penal Code Ann. § 46.04(a)(1)(2)
(Vernon 2003).

            Possession is defined by the Penal Code as “actual, care,
custody, control, or management.”  Tex. Penal Code Ann. § 1.07(a)(39)
(Vernon 2003).  A person commits an
offense only if he voluntarily possesses the prohibited item. Tex. Penal Code Ann. § 6.01(a) (Vernon
2003).  Possession is a voluntary act if
the possessor knowingly obtains or receives the thing possessed or is aware of
his control of the thing for a sufficient time to permit him to terminate his
control.  Id. § 6.01(b); Grantham
v. State, 116 S.W.3d 136, 143 (Tex. App.–Tyler 2003, pet. ref’d).  In cases involving unlawful possession of a
firearm by a felon, the reviewing court should analyze the sufficiency of the
evidence under the rules adopted for determining the sufficiency of the
evidence in cases of possession of a controlled substance.  Young v. State, 752 S.W.2d 137,
140 (Tex. App.–Dallas 1988, pet. ref’d). 
The State must establish that the accused (1) exercised care, custody,
or control of the firearm and (2) was conscious of his connection with it.  See Grantham, 116 S.W.3d
at 143.  The State’s evidence, whether
direct or circumstantial, must establish that the accused’s connection with the
firearm was more than fortuitous.  See
Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  When the firearm is not found on the accused’s
person or not in his exclusive possession, additional evidence must connect the
accused to the firearm.  Grantham,
116 S.W.3d at 143.  Numerous factors may
be considered in determining whether the accused’s connection with contraband
is more than accidental.  See, e.g., Lassaint
v. State, 79 S.W.3d 736, 740-41 (Tex. App.–Corpus Christi 2002, no
pet.).  The number of applicable factors
is not as important as the logical force they have in establishing the elements
of the offense.  Wallace v. State,
932 S.W.2d 519, 524 (Tex. App.–Tyler 1995, pet. ref’d).   

Discussion

            Appellant argues that he jointly possessed the place
where the sheriff’s deputy found the pistol, a place equally accessible to both
Appellant and his wife.  No fingerprint
evidence connected Appellant to the weapon, and there is no direct evidence
that he had ever held it.  Appellant told
the officers that the pistol was in the house, conduct more suggestive of
innocence than guilt.  Moreover, the
stepson’s testimony provided direct evidence that he gave the pistol to
Appellant’s wife for safekeeping while the stepson was stationed in Alaska. 

            There was evidence that Appellant’s wife had a shotgun,
which she kept beside the bed.  Chester
Webb testified that, during an argument, Appellant went into his house, got the
shotgun, and fired it from his porch in a demonstration of anger.  Previously, when questioned by Webb about his
having the shotgun in the house while still under parole supervision, he
replied, “It’s my _____  ______  house.” 
Although the evidence indicates that the shotgun belonged to his wife,
the evidence also indicates Appellant exercised control over it.  The stepson’s pistol was not stored away for
safekeeping, but was in plain view in a linen closet next to the bedroom where
Appellant slept.  Appellant was familiar
with its color and caliber.  Given these
circumstances, the jury could reasonably infer that Appellant exercised “care,
custody, control, or management” of the pistol.

            Weighing the evidence against the appropriate standards
of review, we conclude the evidence is both legally and factually sufficient to
support Appellant’s conviction. 
Appellant’s first and second issues are overruled.

 

            Ineffective Assistance of Counsel

            In his third issue, Appellant contends that his trial
attorney’s performance fell below prevailing 
professional norms in fourteen instances, and that he therefore did not
receive effective assistance of counsel.

Standard of Review

            The standard for testing claims of ineffective assistance
of counsel is set out in Strickland v. Washington, 466 U.S. 668,
104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted for Texas constitutional
claims in Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim.
App. 1986).  To prevail on his claim of
ineffective assistance, an appellant must show that his attorney’s
representation fell below the standard of prevailing professional norms, and
that there is a reasonable probability that, but for the attorney’s deficiency,
the result of the trial would have been different.  Tong v. State, 25 S.W.3d 707,
712 (Tex. Crim. App. 2000).  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Id.  The same test is applied in weighing claims
of ineffectiveness against both appointed and retained counsel.  Hurley v. State, 606 S.W.2d
887, 890 (Tex. Crim. App. [Panel Op.] 1980).

            Our review of counsel’s representation is highly
deferential; we indulge a strong presumption that counsel’s conduct falls
within a wide range of reasonable representation.  Strickland, 466 U.S. at 689,
104 S. Ct. at 2065; Tong, 25 S.W.3d at 712.  This court will not second guess through
hindsight the strategy of counsel at trial, nor will the fact that another
attorney might have pursued a different course support a finding of
ineffectiveness.  Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979). 
That another attorney, including appellant’s counsel on appeal, might
have pursued a different course of action does not necessarily indicate
ineffective assistance.  Harner v.
State, 997 S.W.2d 695, 704 (Tex. App.–Texarkana 1999, no pet.).  Any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

            In order to render reasonably effective assistance, an
attorney must have a firm command of the facts of the case and the governing
law.  Ex parte Welborn, 785
S.W.2d 391, 394 (Tex. Crim. App. 1990); Ex parte Lilly, 656
S.W.2d 490, 493 (Tex. Crim. App. 1983).  “It
may not be argued that a given course of conduct was within the realm of trial
strategy unless and until the trial attorney has conducted the necessary legal
and factual investigation which would enable him to make an informed rational
decision.”  Wellborn, 785
S.W.2d at 393 (citing Ex parte Duffy, 607 S.W.2d 507, 526 (Tex.
Crim. App. 1980)).

Discussion

            Appellant first complains that his attorney demonstrated
ineffective assistance by asking Detective Ira Earls questions on cross
examination about what Appellant told him about the ownership of the guns in
the house.  This allowed the State to
introduce Appellant’s prior murder conviction for impeachment as if Appellant
has been a witness.  See Tex. R. Evid. 806.

            Detective Earls testified that he interviewed Appellant
about the murder of his wife.  In his
testimony, Detective Earls told the jury that, during the interview, Appellant
had informed him that there were two firearms in the house.  On cross examination, Appellant’s counsel
asked if Appellant said who owned the guns in his house.  Detective Earls could not recall what
Appellant had said about the ownership of the pistol, but he did recall that
Appellant had told him the shotgun “was purchased by his wife.”  

            The presence of the guns in the house was undeniable and
never a contested issue.  The only
reasonable defense strategy and the one Appellant’s counsel pursued throughout
the trial was to acknowledge the presence of the firearms in the house but to
demonstrate the paucity of evidence that Appellant owned or possessed
them.  Counsel was faced with foregoing
the best evidence of his lack of ownership or running the risk that the trial
court would allow Appellant’s credibility to be impeached with a thirty year
old conviction.  We do not believe
counsel’s choice was unreasonable.

            Next Appellant contends his counsel was ineffective in
failing to object that the prior conviction was too remote to be used for
impeachment.  However, the record shows
that counsel did object on this ground.

            Appellant also complains that his counsel failed to
object on the ground of relevance to the admission into evidence of the
gruesome photographs of the corpse of Appellant’s wife.  The objection was raised and ruled on by the
trial court.  

            Appellant next maintains his counsel was deficient in
that he “lost control of his ability to effectively defend [him] because he had
suffered so many setbacks concerning the admission of evidence.”  The one example in the record that Appellant
mentions as illustrating loss of control shows zealous advocacy and perhaps
annoyance, but no more.  Appellant cites
no legal authority.  This subissue had
been inadequately briefed and presents nothing for review.  See Tex.
R. App. P. 38.1(h).

            Appellant complains further that his counsel was
ineffective, because the trial court found it necessary to admonish counsel to
refrain from making sidebar remarks.  The
record shows that the judge, outside of the hearing of the jury, told Appellant’s
counsel to allow the witness sufficient time to answer the question asked
before asking, “You don’t remember, do you?” 
Counsel’s transgression was trivial. 
The judge’s reproof was delivered out of the jury’s hearing.  A defendant is not entitled to perfect
counsel.  Bridge v. State,
726 S.W.2d 558, 571 (Tex. Crim. App. 1986). 
An error so minor cannot constitute deficient performance.

            Appellant asserts his counsel demonstrated ineffective
assistance in asking a State’s witness if he liked Appellant, thereby opening
the door to the State’s introduction of evidence of an instance of extraneous
misconduct. 

            During direct examination by the State, Chester Webb, the
first cousin of Appellant’s wife testified that he once saw a shotgun in plain
view in Appellant’s house.  Aware that
Appellant was still  on parole, he asked
Appellant if he was supposed to have “a gun out in the open like that.”  According to Webb, Appellant replied, “It’s
my ___ ___ house.”  In an effort to
demonstrate Webb’s bias against Appellant, counsel asked, “And you’d agree with
me, Mr. Webb, would you not, that you and James Smith aren’t the best of
friends?”  Webb replied, “No, we’re not.”  On redirect examination, the trial court
permitted the State to show, over Appellant’s objection, that at one time
Appellant became angry at Webb, went in his house and got a shotgun, and fired
it from the front porch while Webb hid behind the house.

            It is probable that counsel asked the question knowing
that animosity existed between Appellant and his wife’s cousin, and it is
equally probable that he would never have asked the question if he had known of
the shotgun incident.  But this is
surmise and not shown by the record.  The
record does not reflect how or when counsel learned of the hostility between
Webb and Appellant.   The record is
silent regarding counsel’s knowledge of this instance of Appellant’s
misconduct, or if he had the opportunity to learn of it before his cross
examination.  As is usually the case, the
record on direct appeal is not adequately developed for us to determine whether
the blame for the door opening question should be laid to counsel’s deficient
performance or to Appellant’s failure to reveal the incident to his attorney
before he cross examined Webb.  The record
is not sufficiently developed to overcome the strong presumptions of sound
trial strategy and reasonable assistance. 
See Thompson, 9 S.W.3d at 813-14.

            Appellant next complains that his trial counsel was
ineffective in making an untimely objection to the testimony of an unnamed
detective, thereby failing to preserve error. 
Four detectives testified. 
Appellant’s subissue does not direct the court to where in the record
this occurred or the nature of the error waived by counsel’s untimely
objection.  The issue has been
inadequately briefed and presents nothing for review.  See Tex.
R. App. P. 38.1(h).

            Appellant next complains that after the trial court
allowed Detective Caldwell to give his opinion that Appellant murdered his
wife, his counsel’s cross examination made it clear to the jury that there was
insufficient evidence, despite the detective’s opinion, to charge Appellant
with murder.  He argues that by making it
clear that Appellant was unlikely to be charged with his wife’s murder, counsel
made it more likely that the jury would convict Appellant of illegal possession
of a firearm rather than let him “get away with murder.”  In our view, however, once the detective’s
opinion was introduced, counsel had no choice but to elicit the detective’s
acknowledgment that Appellant had never been charged in his wife’s murder and
that the State lacked the evidence to charge him.

            Appellant also maintains his counsel wrongly accused the
prosecutor of violating the witness rule instead of moving for a directed
verdict.  The record, however, discloses
a possible violation of the witness rule by the prosecutor, which was
subsequently satisfactorily explained in testimony.  Counsel did timely move for a directed
verdict.

            In his thirteenth subissue, Appellant urges that his
attorney’s ineffectiveness was demonstrated by his failure to offer defense
witnesses “and that it seemed obvious that counsel gave up his attempts to
defend Appellant.”  Appellant does not
name the witnesses counsel should have called or what testimony could have been
expected from them.  The record is
inadequate to demonstrate counsel’s ineffectiveness on this ground.

            Finally, Appellant argues his counsel’s ineffectiveness
is demonstrated by his disjointed closing argument to the jury, which was
interrupted by the trial court when he implied that the court had made an
improper evidentiary ruling.  Appellant
omits any citation to the record or legal authority.  Therefore, nothing is presented for
review.  See Tex. R. App. P. 38.1(h).

            On six occasions during bench conferences addressing
counsel’s objections to evidence regarding the murder of Appellant’s wife,
Appellant’s counsel told the court that he was not prepared to defend a murder
charge.  He argued that the admission of
evidence relating only to the murder charge rendered him unable to provide
effective assistance to Appellant. 
Considered in their context, counsel’s statements were argument, not
admissions of ineffective assistance as Appellant alleges on appeal.  

            Considering Appellant’s fourteen allegations both singly
and in aggregate, we conclude that no ineffective assistance by Appellant’s
counsel is shown.  Appellant’s third
issue is overruled.

 

Admission of Evidence

            In his fourth issue, Appellant contends the trial court erred
in admitting photographs of the corpse of Appellant’s murdered wife.

Standard of Review

            A trial court’s decision to admit or exclude evidence is
reviewed under an abuse of discretion standard. 
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  An abuse of discretion occurs when the trial
court acts arbitrarily or unreasonably, without reference to guiding rules and
principles.  Montgomery v. State,
810 S.W.2d 372, 380 (Tex. Crim. App. 1990). 
The trial court is given wide latitude in its decision and the reviewing
court should not reverse the judgment if the trial court’s evidentiary ruling
is “within the zone of reasonable disagreement.”  Torres, 71 S.W.3d at 760; Montgomery,
810 S.W.2d at 391.

Applicable Law

            “‘Relevant evidence’ means evidence having any tendency
to make the existence of a fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.”  Tex. R. Evid. 401.  “Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury. . . .”  Tex. R. Evid. 403.  Evidence of other offenses by the defendant
almost always satisfies the Rule 401 definition, because proof of criminal
propensity makes guilt at least slightly more probable than would be the case
without the evidence.  See Gilbert
v. State, 808 S.W.2d 467, 471 n.4 (Tex. Crim. App. 1991).  However, because evidence of a defendant’s
bad character traits possesses the potential for such a devastating effect on a
jury’s ability to view other evidence rationally, and is poor evidence of
guilt, a mandatory rule was created expressly for its exclusion.  Mayes v. State, 816 S.W.2d 79,
86 (Tex. Crim. App. 1991).  Rule 404(b)
provides that “[e]vidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show action in conformity
therewith.  It may, however, be admissible for other purposes, such as
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident. . . .”  Tex. R. Evid. 404(b).

            One of the other purposes for which evidence of character
conformity is admissible as an exception to Rule 404(b)’s bar of evidence of
other bad acts is “same transaction contextual evidence.”

 

Same
transaction contextual evidence is deemed admissible as a so-called exception
to the propensity rule where “several crimes are intermixed, or blended with
one another, or connected so that they form an indivisible criminal
transaction, and full proof by testimony, whether direct or circumstantial, of
any one of them cannot be given without showing the others [citation omitted].”

 

 

Mayes, 816
S.W.2d at 87 n.4.  Same transaction
contextual evidence is admissible under Rule 404(b)  “only to the extent that it is necessary to
the jury’s understanding of the offense.” 
Pondexter v. State, 942 S.W.2d 577, 584 (Tex. Crim. App.
1996) (quoting England v. State, 887 S.W.2d 902, 915 (Tex. Crim.
App. 1994)).  “Such evidence is
admissible only ‘when the offense would make little or no sense without also
bringing in the same transaction evidence.” 
Id.

            Same transaction contextual evidence must be distinguished
from general background evidence or “background contextual evidence” defined as
facts not bearing directly on the purely legal issues, but facts that merely
fill in the background of the narrative and give it interest, color, and
lifelikeness.  Mayes, 816
S.W.2d at 87.  In Mayes,
the court of criminal appeals concluded that background contextual evidence
offered only for the reason that it is “background evidence” and therefore
helpful to the jury is not admissible as one of the “other purposes” for which
evidence may be admitted under Rule 404(b). 
Id. at 87-88.

Discussion

            The photograph in question shows that Appellant’s wife
was shot in face with a shotgun at close range. 
Detective Rasco, through whom the photograph was introduced, agreed that
the photograph had nothing to do with the pistol recovered at the scene.  Considering the facts surrounding the offense
charged in the instant case, possession of a firearm by a convicted felon,
together with elements of that offense, we conclude that the photograph in
question had no tendency to make more probable or less probable any fact of
consequence to the determination of Appellant’s guilt.  If not apparent at the outset, it soon became
apparent that the State’s strategy was to implicate Appellant in the murder of
his wife, an offense extraneous to the charged offense.  It is equally clear that, as a part of that
strategy, the photograph was introduced for its inflammatory effect, not to
prove Appellant illegally possessed a pistol.

            Since the evidence is inadmissible under Rule 401, there
is no need for a Rule 403 or 404 analysis. 
However, we note that the trial judge found the evidence contextual and
admitted it, after conducting the balancing test under Rule 403, as an
exception under 404(b).  But even if we
were to assume that the evidence satisfied Rule 401, the evidence would still
be inadmissible as contextual evidence.

            The evidence cannot be considered as same transaction
contextual evidence.  Appellant called
9-1-1 to report he had returned home to find his wife murdered.  The sheriff’s deputies testified that they
found her body when they arrived.  These
facts were appropriately in evidence to show why the deputies were admitted
into Appellant’s house in the first place, and as an essential part of the
narrative explaining the discovery of the primary offense.  But the introduction of the photograph could
have been easily avoided, and it contributed nothing to the jury’s
understanding of the charged offense.  See
Pondexter, 942 S.W.2d at 584. 
It might be argued that the photograph was admitted only as background
contextual evidence, “to fill in the background of the narrative and give it
interest and color.”  See Mayes,
816 S.W.2d at 87.  However, the evidence
cannot be viewed as admissible “because of [its] salutary effects on the jury’s
comprehension of the offense in question [possession of a firearm].”  Id.  Its intended purpose, so successfully
exploited by its proponent, was to brand Appellant as a murderer.  This is not one of the purposes for which
evidence of extraneous offenses may be admitted under Rule 404(b).  The trial court erred in the admission of the
photograph.

            Under this issue, Appellant also urges that the trial
court erred in allowing testimony that a shotgun had been kept in the
house.  Appellant argues that he was on
trial for possessing a pistol, not a shotgun, and that the shotgun evidence
served only to connect Appellant to the shotgun murder of his wife.

            We believe the evidence that a shotgun had been kept in
Appellant’s house had relevance to the offense charged.  When the trial judge made his ruling, he was
aware that the State intended to introduce evidence that, during his
altercation with Webb, Appellant had gone into his house, retrieved a shotgun,
and fired it from the porch.  Appellant’s
access to other firearms, and his prior illegal use of one those weapons had
relevance beyond that argued by Appellant. 
The trial court’s ruling was well within the zone of reasonable
disagreement, and we conclude the trial court did not err in its admission of
the testimony regarding the shotgun.

Harm Analysis

            We have held that the trial court erred in admitting the
photograph showing the body of Appellant’s wife shot in the face with a shotgun
at close range.  An error in the
admission of evidence should be disregarded unless it affected Appellant’s
substantial rights.  See Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence on the jury’s
determination of its verdict.  King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  An accused’s substantial rights are not
affected by the erroneous admission of evidence if the court, after examining
the whole record, has fair assurance that the error did not influence the jury
or had but a slight effect.  Solomon
v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

            Appellant contends the error is not harmless, because he
received the maximum sentence provided for the offense.  Although Appellant stipulated at the
beginning of the trial that he had been convicted of a felony and was still
under parole supervision at the time of the offense, the State was successful
in introducing evidence that Appellant’s prior conviction was for murder.  It is not unreasonable for a jury to return a
harsher sentence against a convicted murderer in possession of a firearm than
they would against one whose prior conviction was for a lesser felony.  Moreover, the jury heard other testimony equally
damaging and inflammatory.  Over Appellant’s
objection, the State asked Detective Caldwell, “[B]ased on your training and
experience, based on your investigation, who do you believe killed this lady?”  Detective Caldwell answered “James Smith.”  The prosecutor proceeded to ask, “Would that
be one and the same James Smith who was married to Mary Smith who’s shown shot
in State’s Exhibit Number 7?" 
Detective Caldwell answered “yes.”

            The jury also heard Detective Caldwell testify that,
immediately after his wife’s murder, Appellant was calm and unemotional and
even laughed during the interview.  It
was probably unavoidable, given the bare facts Appellant reported in his 9-1-1
call, that the jurors, like the officers who came to investigate, would suspect
Appellant killed his wife.  And the State
was not reluctant to exploit that suspicion. 
We have examined the whole record. 
Given the mass of other devastating testimony, we conclude that the
photograph erroneously admitted had no effect or but a slight effect on the
jury’s determination of Appellant’s conviction or sentence.  The error was harmless.  Appellant’s fourth issue is overruled.

 

Disposition

            The judgment is affirmed.

 

                                                                                                    BILL BASS 
  

                                                                                                            Justice

 

 

Opinion
delivered July 31, 2007.

Panel
consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court
of Appeals, Tyler, sitting by assignment.

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)